## ANN SCHLOEMER v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division Two, May 14, 1907.**

1. **NEGLIGENCE: Injury to Arm of Passenger: Physical Facts: Demurrer.** Plaintiff's husband was a passenger, on the fourth seat, on a street car, and rested his arm on the sill of a window, which was open and protected by four iron guards, two and one-half inches apart, the lower one being three and one-half inches above the sill. Plaintiff's evidence was that he rested his elbow on the sill, his hand to his face, and that the car on the other track, as it passed, scraped the side of the car, and broke his arm; that the rail of the track was defective, and sunk down as the weight of the car came on it, and that caused the car to lurch toward the car on the other track. The arm was severed by the other car, between the elbow and the wrist, and the hand and lower arm were thrown into the other car. Defendant's evidence was that he sat with

his side to the car, and his arm protruded through the window, over the top guard, toward the other track. *Held,* first, that it was not negligence for him to rest his arm on the window sill; *second,* the physical facts were not such as to authorize the court to declare, as a matter of law, that the accident could not have occurred as the plaintiff's witnesses stated; and, *third,* for the purposes of the demurrer, it does not matter that defendant's evidence was variant from plaintiff's, for it was the province of the jury to weigh both, and in this case there is reason why the jury should have chosen to credit plaintiff's witnesses, since they consisted of the conductor and the only other eye-witnesses who saw the position of deceased's arm.

2. ———: **Passengers: Street Car: Care.** Street car companies are held to the same degree of care and vigilance in preventing injuries to their passengers as is exacted of other railroads carrying passengers for hire—that is to say, the highest degree of care and skill which prudent men would use and exercise in a like business and under like circumstances.

3. ———: **Evidence: Statement of Conductor: Impeachment.** The motorman had testified that he felt no jolt or jar of the car as it passed the other, and that was material, for plaintiff's case was based on the fact that the rail was defective, that it gave down under the weight of the car, and that this caused it to lurch towards the car passing on the other track, and that the lurch caused the passenger's arm to slip through the space three and one-half inches wide between the window sill and the first bar above, and when it did so that car, which came so close to the other as to scrape its side, tore off his arm. On cross-examination the motorman was asked if he had not stated to a witness that it was the third time his car had caught there within two weeks. *Held,* that such evidence would not have been competent as a part of the *res gestae,* but the question was competent as tending to contradict the motorman's testimony in chief, to the effect that the track was in good condition, and for the purposes of impeachment, and the testimony of the witness to whom he made the statement was also competent for the same purpose.

4. ———: ———: **Repair of Track: In Rebuttal.** Evidence that defendant after the accident had repaired the track is not admissible, as original evidence, to establish defendant's negligence in maintaining a defective track; but where defendant's witnesses have testified that the track was in good condition at the time of the accident, and has remained in the same condition since, plaintiff is not concluded by that testimony, but it is competent, for the purpose of contradicting them, for plaintiff, in rebuttal, to show that defendant has since repaired the track.

Appeal from St. Louis City Circuit Court.—*Hon. War-wick Hough,* Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1)   The physical facts testified to by both plaintiff's and defendant's witnesses show conclusively that deceased's arm could not have come in contact with the northbound car in the manner as described by plaintiff's witnesses.  Payne v. Railroad, 136 Mo. 562; Hook v. Railroad, 162 Mo. 581; Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 373; Spero v. Railroad, 102 Mo. App. 250.  (2)   The court erred in permitting counsel for plaintiff in his cross-examination of defendant's witness Hawkins to ask said witness if he had stated on the 20th day of May, 1903, while on his car, to one Jacob Luetzl in reference to the accident to deceased, that it was a dirty shame that they didn't fix that track; that that was the third time that his car had caught there within two weeks, and in permitting said counsel to ask of Jacob Luetzl, in rebuttal, if Motorman Hawkins had not at the time and place made the foregoing statement to him, and in permitting Leutzl to answer the question.  Wojtylak v. Coal Co., 188 Mo. 287; Hamburger v. Rinkel, 164 Mo. 407; Ruschelberg v. Railroad, 161 Mo. 79; Koenig v. Railroad, 173 Mo. 721. (3)   The court erred in permitting witnesses Jacob Luetzl and Walter VanDyke to testify that they had seen defendant changing or repairing its tracks at the place of the accident after it had occurred.  Wojtylak v. Coal Co., 188 Mo. 287; Bailey v. Kansas City, 189. Mo. 509.

*A. R. Taylor* for respondent.

(1) Every averment of the petition had ample evidence in its support, and the verdict of the jury settled the facts. The contention of appellant, that deceased could not have had his injury by reason of his arm being thrown under the lower guard of the window, discredits and holds for naught the testimony of the witness, Jacob Luetzl, Joseph Schleyer, Joseph Schloemer, the son of deceased, and the conductor, Perkins. If the space between the sill and the first bar was three and one-half inches, and if the window was down, as testified by Luetzl, and by Joseph Schloemer, then if the deceased was in the position described by plaintiff's witnesses and the conductor of the car—and the car sustained a violent lurch and collision with the northbound car, as there was ample evidence that it did do, then the explanation of the injury is natural. The shock would naturally displace his arm, the open space under the window would, without offense to nature's law, cause his arm to go through, the proximity of the northbound car was such that it would catch the slightest extension of the arm, and the injury is thus explained in entire consistency with the physical law. (2) The evidence as to the condition of the track at the trial was most material—and, of course, any statement made by the witness tending to contradict what he said at the trial, was competent impeachment. Wojtylak case, 188 Mo. 289; Humburger v. Rinkel, 164 Mo. 407.

GANTT, J.—This is an action by the widow of Joseph Schloemer to recover five thousand dollars as damages caused by the alleged negligence of the defendant, a carrier of passengers, in providing an insufficient railroad and defective appliances whereby said Joseph Schloemer, a passenger on one of defendant's street cars, was injured and died on the 20th of May, 1903.

The petition alleges in substance that the plaintiff was the widow of Joseph Schloemer at the time of his death; that on the 19th of May, 1903, the defendant was a corporation and operating a railway and cars for the purpose of carrying passengers for hire in the city of St. Louis as a common carrier of passengers; that on the said date, the plaintiff's husband was a passenger on the defendant's south-bound car on Eighth street at or near Julia street in the city of St. Louis, when his left arm was struck, crushed and cut off by one of the defendant's north-bound cars on Eighth street in passing the said car on which plaintiff's husband was such passenger, catching and crushing his hand and arm against said car on which he was such passenger and thereby plaintiff's husband was so injured that he died from said injuries on the 20th of May, 1903. Plaintiff avers that defendant's railway tracks were defectively constructed in that they were too close to each other to allow sufficient space for defendant's cars to pass by each other at said point with safety to its passengers, and said tracks were further defectively constructed and maintained in that the inside rails were lower than the outside, causing the cars in passing to nearly touch each other and exposing the passengers on street cars, who should allow or suffer any part of their person to protrude beyond the windows of said cars, to be struck and injured by said passing cars, and said tracks were further defective in that they were worn, out of repair and thereby caused said cars to approach dangerously close to each other in passing and thereby exposed passengers to peril. Plaintiff avers that said car on which her husband was such passenger was defectively constructed in that the guard at the window was too high and permitted the arms of passengers when resting on the window sills of the car to protrude beyond said car and be endangered by passing cars in striking and injuring them. That

whilst her husband was such passenger on said car, riding with his elbow on the window sill of said car, his arm was crushed by a lurch or bolt of said car, and by reason of said defective condition of said car and the guard thereof, to be thrown beyond the extension of said car, and by reason of said defective condition of defendant's tracks and said defective condition of said car and the guard thereof, was struck by another of defendant's cars and he was injured as aforesaid; that said cars of defendant were public conveyances, and plaintiff's husband was a passenger on one of them as aforesaid. That by the death of her husband as aforesaid, an action has accrued to plaintiff to sue for and recover five thousand dollars according to the statute in such case made and provided.

The answer is a general denial, and a plea of contributory negligence in that the injury was caused by the deceased putting his arm out of the car window so that it was struck by a passing car.

The reply was a general denial.

The evidence tended to show that plaintiff was the lawful wife of Joseph Schloemer at the time of his death. That on the evening of May 19, 1903, Joseph Schloemer was sitting in the fourth seat from the rear of the car on the east side as he rode to the place where his injury occurred. He sat in his seat and rested his elbow on the window sill of the car.

Jacob Luetzl, a passenger on this car in the third seat from the rear, but on the west side of the car, testified as to the manner in which deceased sat in the seat and rested his arm: "He was sitting by the window like that, chewing his tobacco, and it looked—that is the way I seen him all the way down." Q. "Where was his arm resting?" Ans. "On the sill, like this. He had his hand resting on his cheek and his elbow on the sill."

Joseph Schleyer testified he got on this car at

Sixth and Market streets and rode in the same seat with Luetzl. Asked if he noticed the deceased, he said: "Well, certainly, I got on at Sixth and Market and the old man was sitting in the car and had his hand resting like this on the window sill" (indicating), "with his elbow on the window sill."

The conductor of this car, a witness for the defendant, on this point testified as follows: "Where were you at the time?" Ans. "I was on the back platform." Q. "You could see into the car?" Ans. "Yes, sir." Q. "You could see all the passengers in the car that were as far forward as the third seat, couldn't you?" Ans. "Yes, sir, I did not have many passengers on the car." Q. "The passenger on the third or fourth seat was in plain view, was he not." Ans. "Yes, sir, they were in plain view." Q. "Now, did you see the man lying there, lying against the side of the car with one hand reaching up over the top there and sticking? (out)" Ans. "No, sir; if I did I would have stopped him." Q. "You would not have allowed it?" Ans. "No, sir."

The testimony further showed that the window next to which the deceased sat was open, that is, the sash was lowered into the window pocket, below the window sill. For the protection of its passengers defendant had placed across the lower part of this window and on the outside of the car, four iron bars two and one-half inches apart, the lowest bar was three and one-half inches above the sill of the window, but the testimony for the defendant tended to show that when the sash was let down into this pocket, the wooden frame on the top of the sash would stand up above the level of the window sill and that the distance between the top of this sash and the lower rod would not be over from a half to three-quarters of an inch. On the other hand, there was evidence tending to show that when the sash was down in the pocket, the space between the top of

the sash or the window sill and the lower bar, was three and one-half inches. On the part of the defendant, the testimony tended to show that the deceased was sitting in the seat with his arm resting on the rail (referring to the rods or guards to the window); that his arm was on the top one and his hand outside of the car.

The witness, Deusterhause, could not say how far his hand was extended out of the window. On cross-examination he stated that the deceased was sitting two or three seats in front of him and was resting against the east side of the car. He was asked, "He was lying against the east side of the car; here is the outside of the car and in order to get his hand out the way you put it, he had to twist it around this way, didn't he?" Ans. "I did not say that he twisted it." Q. "Did he have it back this way, or did he have it—" Ans. "He had it straight." Q. "He had it straight out this way, and was lying against the back of the car?" Ans. "Yes, sir." Q. "And had his hand out this way." Ans. "Yes, sir." Q. "You saw that?" Ans. "I saw it that way." Q. "I understand that he did not lay with his front towards the window, did he?" Ans. "No, sir." Q. "He lay with his back and side towards the window this way." Ans. "No, on the side, that is with his left arm and shoulder next to the iron rods, and he had his head on his arm." The witness indicated a posture where the arm rested slightly from the shoulder stretched out.

Madden, the motorman on the north-bound car, testified that he noticed the man's arm as the two cars were about to pass each other. He said that the deceased was sitting in the car with his elbow doubled and out over the top of the top guard. Perkins, the conductor on the north-bound car, testified that the deceased was sitting in his seat with his elbow over the top bar and extending out from four to six inches beyond the car.

No. 6. This picture represent a boy large make sitting on the very next occupied by Mr Schloemer, showing that galleri & was called above his shoulder. — 29742b. Jos Schloemer case. This man of 5 body when seated measures 24½ inches from seat to left of shoulder. —

Schloemer v. Transit Co.

No. 5. shows seat in car No 1525 the distance from seat to top of guard rails at window is 36 inches, the distance from top of guard rail to top of window is 15 3/4 inches.

2974 n Jos Schloemer case

Two photographs were offered and used in evidence and will accompany this opinion.

Weidner, who took the photographs, testified that the man whose photograph was taken in exhibit number one, was five feet ten, or five feet eleven, tall, whereas the evidence tends to show that the deceased was about five feet eight. Weidner also testified that the distance from the seat to the top of the top rod was three feet, and there was a distance of two and one-half inches from the top of the sash to the first iron rod when the sash of the window was as low down as he could get it in the pocket, and the distance between the rods was two and one half inches, and there were four rods. As to the space between the window sill or the first or lower bar, Leutzl testified that he saw the space measured within five minutes after the injury and there was three and one-half inches from the bottom of the sill up to the first rod and two and one-half inches between the other rods, and he also testified that when the window was let down, the sash went clear below the surface of the window sill. Joseph Schloemer, a son of the deceased, measured the space between the sill and the rod a few days after his father's funeral, and found it to be three and one-half inches, and that he put the window down himself and it went down until the top of the sash was even with the top of the sill.

The evidence also discloses that the defendant at that time maintained in Eighth street double tracks, over which it operated electric cars north and south. When the car was about midway between Carroll and Julia streets the arm of the deceased, Joseph Schloemer, was struck by a north-bound car and severed between the elbow and wrist, the severed hand and forearm falling in the aisle and about the center of the north-bound car.

The evidence for the plaintiff tends to show that

the arm of the deceased was caused to project beyond the window sill and outside of the car by a sudden and violent lurch of the car on which he was riding, caused by a defective condition of the track, which condition, plaintiff's evidence tends to show, was such that the rail would go down an inch or more as the car passed over it. This lurch, plaintiff insists, brought the cars together and in this way deceased's arm was struck by the north-bound car as it passed, and with the momentum of the combined speed of the two cars the severed arm was thrown into the north-bound car.

The defendant's contention is that the deceased voluntarily placed his arm on the top bar across the window and in such a manner that his hand and the part of his forearm projected beyond the side of the car and thus was severed by the north-bound car as it passed.

The errors complained of are three only. First that the court erred in not sustaining a demurrer to the evidence, because the physical facts testified to by all the witnesses conclusively established that the arm of the deceased could not have come in contact with the north-bound car in the manner described by plaintiff's witnesses. The second and third grounds of error are predicated upon the admission of testimony, which will be noticed in the course of the opinion.

I. The insistence of the defendant that the circuit court erred in denying its demurrer to the evidence is predicated upon the claim that the deceased's arm must have been resting on the top bar across the window, and his hand and forearm projecting beyond the side of the car, and that the physical facts were such that the deceased could not have been injured by the sudden projecting of his arm through the space between the lower bar and the sill caused by the lurching of the car on which he was riding, on account of the de-

fective condition of the track at that point. It will be observed that the plaintiff's petition counts upon a combination of negligent acts on the part of the defendant. First, in so constructing its parallel tracks as to be dangerous to passengers on its cars by the passing of said cars. And, second, that the track at the point where the injury occurred was in a defective condition, so much so that a man standing with his weight on the inside rail would cause it to give to the extent of an inch or more. The testimony on behalf of the plaintiff was that the deceased took passage on the car at Market street some twenty blocks north of the place of the injury to the deceased, and took his seat on the east side of the car in the fourth seat from the rear of the coach. He sat next to a window and rested his left elbow on the window sill of the car with his hand upon his cheek, at least a portion of the time. He rode in this position all the way down from Market street. There was a space between the bottom bar or window guard and the window sill of three and one half inches. If this was his position, and such was the evidence of two witnesses for the plaintiff and practically of the conductor of the car also, and the car sustained a violent lurch caused by the defective condition of the track, which plaintiff's evidence also tended to show, this lurch would inevitably bring the cars close together, and there was evidence that they scraped against each other. It was by no means a violent inference for the jury to draw that this sudden lurch would have displaced the elbow resting on the window sill and caused an involuntary extension of the forearm of the deceased through the open space between the window sill and the lower bar across the window. That it was not negligence in the deceased to sit with his left elbow resting on the window sill by which he sat, is too plain for discussion. But, at all events, the testimony on behalf of the plaintiff in this case was not such as would justify the court in

having declared him guilty of contributory negligence as a matter of law. [Winters v. Railroad, 39 Mo. 468; Barton v. Railroad, 52 Mo. 253.]

The demurrer to the evidence in this case assumes, as it was said by Judge Ewing in Barton v. Railroad, supra, that the defective track and the sudden lurch of the car caused thereby, "could not have irresistibly forced the plaintiff's arm outside of the window, or that it could not have been an involuntary or mechanical movement prompted by an instinctive shrinking from imminent danger." [See, also, Smith v. Railroad, 120 Mo. App. 328.]

The rule of law is firmly established in this State that street car companies are carriers of passengers and are held to the same degree of care and vigilance in preventing injuries to their passengers, as is required of other railroads carrying passengers for hire, that is to say, the highest care and skill which prudent men would use and exercise in a like business and under like circumstances.

Neither does it matter for the purposes of a demurrer that the evidence of the witnesses for the defendant was variant from that of the witnesses for the plaintiff. It was the province of the jury to weigh the testimony of both, nor do we see anything strange in the fact that the jury credited the evidence of the witnesses for the plaintiff rather than that of the witnesses for defendant, especially when it appears that the witnesses Luetzl and Schleyer, and the conductor of the car, of all the witnesses in the case, occupied the best position to observe the actions and the position of the deceased from the time he entered the car up to the moment he was injured. Certainly the testimony of Deusterhause, as it appeared in the transcript, must have been very unsatisfactory, and the conductor and motorman on the north-bound car were not in a position, considering the rapid movements of the two cars,

to have caused the jury to have accepted their version rather than that of those who sat in immediate proximity to the deceased. And it was for the jury, in view of the physical facts demonstrated by the two photographs in evidence, to accept or reject the theory of the defendant that a man of the proportions of the deceased could have lifted his elbow over the top guard bar of the window from the position in which all the evidence shows him to have been and had his arm extending out in the manner that was detailed. In view of all the testimony, we think that the trial court committed no error in overruling the demurrer to the evidence. There was no conflict with any known physical law, if the evidence for the plaintiff was true, and the jury by their verdict have said it was true.

II.   It is next contended that the trial court committed error in permitting plaintiff's counsel, on cross-examination of defendant's witness Hawkins, the motorman in charge of defendant's south-bound car at the time of the injury to the plaintiff, to ask him if he had not said on the 20th of May, the day after the deceased was injured, while on his trip south, in a conversation with Luetzl and referring to the accident to deceased, "That it was a dirty shame that they did not fix that track, that that was the third time that your car had caught there within two weeks," and in permitting Luetzl to testify in rebuttal that the motorman had made the foregoing statement to him at the time and place mentioned. To understand this assignment of error it is necessary to show the connection in which it occurred. The witness Hawkins testified that he was the motorman in charge of the car, number 1525, on which the deceased Mr. Schloemer was riding when his arm was severed. He was asked: Q. "Tell the jury whereabouts that happened with reference to Carroll street?" Ans. "Well, just as I remember the cars cleared one another there in between Julia and Carroll

on Eighth street; I never felt any jar or anything else, I did not know anything was the matter." Q. "Do you know whereabouts the cars were at the time that the arm was lost, at the time of the — —?" Ans. "Well, I got a bell to stop at Carroll, and that is a short block from there to Julia, and my car was just regular speed there; we just speeding the motors and going — —, it was not going fast, when I got a bell to stop, and I turned around and looked, and I seen this man in the car." Q. "You did not see the man before he was injured?" Ans. "No, sir." Q. "Do you or not have any personal knowledge as to how that occurred?" Ans. "No, sir." On cross-examination counsel for the plaintiff requested Luetzl to stand up, and then asked the question above set forth, to which defendant's counsel objected, on the ground that the defendant was not bound by any declaration that the motorman may have made and they could not call this out in order to impeach him, to which counsel for the plaintiff replied that the witness has stated that he did not know anything about how it happened, and that he felt no jar or jerk and the plaintiff now proposes to show in explanation of how this thing happened that the car tracks were in bad condition there and that the witness's car had caught there three times within two weeks, and to contradict his statement that he now makes on the stand that he knew nothing about how it happened. The court ruled that it was competent for the plaintiff to show by this witness the condition of the tracks at the time of the injury and that the question as to the contradiction of the witness would come up afterwards and if it was material the plaintiff would have the right to contradict it. Thereupon the plaintiff's counsel renewed his question and asked the witness if he told Luetzl that, and he answered that he did not. He was then asked, "Now, as a matter of fact, was not your

car caught there several times?" He answered, "No, it was not that I know of." We are cited by the learned counsel for the defendant to Koenig v. Railroad, 173 Mo. l. c. 721, where it is ruled by this court that it was incompetent to prove the statements made by a motorman made after an accident in which his car ran over a child, to the effect that he did not see the child, he was looking at the car going east, because it was a narration of a past event with respect to which he was not authorized to speak for his employer. That evidence in that case was offered in chief by the plaintiff as a part of his case and not upon cross-examination, nor for the purpose of impeachment or contradiction. Counsel also cite the case of Ruschenberg v. Railroad, 161 Mo. l. c. 79, in which a similar ruling was made. These cases must be accepted as the settled law of this State. But the question propounded in this case was for a different purpose; here, the witness had testified for the plaintiff that the cars in question had cleared each other without contact and that there was no jar or jolt, or as the plaintiff's witnesses put it, no "lurch." This was a material fact in issue in the case, because if the cars had cleared all right, and there was no jar or jolt, it tended directly to contradict the evidence of the witnesses for the plaintiff that there was a sudden lurch of the car that threw deceased's arm out of the window and caused the injury. On cross-examination the motorman, the witness who had so testified, had his attention called to the time and place and to his statement tending to show that at said time and place he had made to Luetzl a statement upon the same point contradictory of the evidence he had just given as to his knowledge of the injury. It is elemental that one way of discrediting a witness is by showing either through cross-examination or by other witnesses that the witness has at another time stated

the opposite of what he now. states, or has otherwise varied from his present story. But before this can be done, it is generally held necessary in the case of verbal statements, first, to ask him as to the time, place and person involved in the supposed contradiction. And, as said by this court in Hamburger v. Rinkel, 164 Mo. l. c. 407, "Contradictory statements which may be shown for the purpose of impeaching a witness must be of facts pertinent to the issue, and which could have been shown in evidence as facts independently of the inconsistency, and not merely of opinion in relation to the matter in issue." [1 Greenleaf on Ev. (16 Ed.), secs. 461, 462.] It will be observed that the question propounded to the witness did not call for a mere matter of opinion, which he had previously given, which is not allowable (McFadin v. Catron, 120 Mo. l. c. 263, 264, and cases cited), but was confined directly to his statement made on a previous occasion as to the condition of the track, which was a fact directly in issue and pertinent to the matter on trial. The evidence here was offered and admitted, not as original evidence as part of the *res gestae,* but for the purpose of discrediting and contradicting the evidence of the witness as to his knowledge of the defective condition of the track and of the collision of the cars at the time of the injury to the deceased. Under the charge in the petition that the defendant was negligent in that it had built its tracks too close together and that the inside rail was lower than the outside rail, and the track was out of repair, it was clearly competent to show this defective condition of the track. We think, therefore, it was competent for the plaintiff on cross-examination to ask the witness whether at the given time and place and to the party named, he had not made this prior inconsistent statement, and that it was a material matter upon which he could be impeached.

Defendant also relies upon the decision of this

court in Wojtylak v. Coal Co., 188 Mo. l. c. 288, but that case has little or no bearing here, because the alleged impeaching matter was not made by the witness sought to be impeached in that case. In that case, the witness was asked if certain men had not applied to him words of abuse some time after the injury; it was not pretended that the witness did or said anything at the time bearing upon any issue. Certain miners had accused him of failure to do his duty, and he said nothing, and the counsel sought to get before the jury merely the defamatory statement to him by the other miners. And the circuit court permitted the impeaching witnesses to testify that the accusations denied by the witness were made. This court held in that case that the witness could not be impeached by showing that certain men abused him. While in the case at bar, the impeachment went to the statement of the motorman as to the condition of the track, and the facts distinguish it clearly from the Wojtylak case.

III.  Lastly, it is urged for reversal that the circuit court erred in permitting Luetzl and VanDyke to testify in rebuttal that they had seen defendant repairing its tracks at the place of the accident soon after the injury.  Obviously this evidence, under the repeated ruling of this court, was not admissible as original evidence in chief for the plaintiff. [Brennan v. St. Louis, 92 Mo. l. c. 488; Alcorn v. Railroad, 108 Mo. l. c. 90; Railroad v. Hawthorne, 144 U. S. 202; Bailey v. Kansas City, 189 Mo. l. c. 510, et seq.] Here again it is necessary to understand the conditions upon which this testimony was admitted. For the defendant, William Finn, the defendant's general roadmaster, was called as a witness. He was questioned as to the condition of the track at the time of the injury, and he testified that the track was well built and was in excellent condition. After he had stated how the track

was laid, and its condition, he stated that it was in the same condition now as it was then. Then the counsel for the defendant asked this question, "Tell the jury whether or not you have made any change *or repairs in it?*" and he answered, "No, sir." When the plaintiff, then in rebuttal, called VanDyke and Luetzl and by preliminary inquiry showed their knowledge of the track at the place where the injury occurred, counsel for the plaintiff inquired of them what if anything they knew of repairs being made of the said tracks at the place where the accident occurred. Thereupon the circuit court ruled that it was competent to show by these witnesses or any witness that the statement of the roadmaster (to the effect that no repairs had been made in the track at said point) was incorrect, or that he was mistaken, or that his statement was untrue, and, therefore, that this was proper rebuttal testimony. Thus it will be seen that the defendant for the purpose of sustaining its position that the track was in good condition, asked of its witness, the roadmaster, whether any repairs had been made, and in this manner to show to the jury that the track had been so well constructed that there had been no repairs made on it. The question presented is, then, can the defendant, in order to prove that its track was in a good condition, offer evidence that it had never been repaired, and that plaintiff is concluded by such evidence, and cannot show in rebuttal that this statement was not true, by showing that there had been repairs? While this court has uniformly ruled that evidence of repair of a highway or track after an accident, is not admissible as evidence of negligence, it has never ruled that where the defendant in proving that its track or highway was in good condition, does not stop at that, but undertakes to show that fact by proving that no change or repair was made, it was not competent for a plaintiff to rebut such statement. In this case, the evidence was admitted

solely in rebuttal to the testimony of the roadmaster and was so announced by the circuit court when it was admitted, and no effort was made by the defendant to obtain an instruction from the court confining the evidence to that purpose.

In our opinion there is no reversible error in the record, and the judgment must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.