## THE HANS MAERSK. THE WILLETS POINT. STEAMSHIP CO. OF 1912 v. UNITED STATES.

District Court, E. D. New York.
March 29, 1930.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, of counsel), for libelant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (C. E. Wythe, Asst. U. S. Atty., of New York City, of counsel), for the United States.

GALSTON, District Judge.

The steamship Hans Maersk and the dredge Willetts Point, the latter operated by and for the United States, came into collision on the morning of January 3, 1927, in the vicinity of Sandy Hook.

Suit was brought by the Steamship Company of 1912 A/Z, as owners of the Hans Maersk, against the United States government pursuant to the authority of Public Law No. 546, Sixty-Eighth Congress, Act approved March 3, 1925 (43 Stat. 1112, US CA tit. 46, § 781), entitled: "An Act authorizing suits against the United States in admiralty for damage caused by and salvage services rendered to public vessels belonging to the United States, and for other purposes," for damages sustained by the Hans Maersk. A cross-libel was brought by the United States government for damages sustained by the Willets Point.

The Willets Point is a seagoing hopper dredge about two hundred feet long, having two propellers, Diesel engines, and speed when loaded of between seven and eight knots. With the starboard propeller alone, the speed is not more than four knots. The loaded draft is eighteen feet.

The Willets Point had been dredging on the west side of the main ship channel between buoys 24 and 18. Somewhat after 8 o'clock a. m. she got under way for the dumping ground at sea. The port engine had been shut down for repairs, and she used only her starboard engine. The weather was hazy, shutting out the usual ranges, the tide ebb, and little, if any, wind. The dredge was fully loaded and was proceeding down the channel in a southerly direction in Sandy Hook bay. As she rounded gong buoy No. 18 her speed was between three and four knots per hour. From that point on the course was southeast by east heading for the Sandy Hook light. After steering dead on the light, the next change of course was east half north down the main channel. The navigator on the Willets Point first saw the Hans Maersk while the Willets Point was on her course from buoy No. 18 headed to the light at the Sandy Hook point, or about abeam of buoy No. 16. Navigator Ruddy said that at this time he saw two jets of steam from the Hans Maersk whistle, but did not hear any sound. As the Hans Maersk got close to buoy No. 10 she again blew two blasts. It was then apparently that the trouble started and the emergency arose, for, when the Willets Point threw her

helm to starboard and got straightened out, she started swinging to starboard, and it was found that her steering gear was out. Prior to the mishap to the steering gear the vessels were headed to pass starboard to starboard. Thereupon she hoisted two black balls to indicate that the ship was not in control and blew a danger signal of several short blasts.

As the Hans Maersk approached and got within two hundred feet she dropped her starboard anchor in the endeavor to check her headway, but was unsuccessful in preventing collision. Shortly before the collision, perhaps about ten seconds, the starboard engine of the Willets Point had been stopped. It will be recollected that the port engine of the Willets Point had not been in operation, indeed had been out of commission from the time of getting under way.

The navigation of the Hans Maersk was under the control of a pilot. It appears that when he saw the Willets Point sheering toward his vessel he blew two blasts to warn her to straighten out. The Willets Point responded with an alarm signal, to which the Hans Maersk responded with two more blasts to indicate that the only thing that could be done to avoid collision was a starboard to starboard passage. When the Willets Point responded with a second danger signal the pilot stopped the engines of the Hans Maersk, blew one blast, and went astern full speed on the engines, dropping his starboard anchor. In the collision which followed, the port bow on the Willets Point struck the starboard bow of the Hans Maersk at right angles.

Concerning the situation of imminent peril which arose quite suddenly, accounts may honestly differ. Chief of these differences is the question of time which elapsed from the sheering of the Willets Point to the happening of the accident. According to Ruddy, six minutes elapsed between the second two blast signal of the Hans Maersk and the danger signal given by the Willets Point. Pilot Peterson of the Hans Maersk, on the other hand, said that that period was about a minute.

The mathematics of the situation seem to be against the correctness of Ruddy's estimate, for when the Willets Point began to sheer, which must have been at the time that the navigator realized that the steering gear was out and at which time she was beyond control, the vessels, according to witnesses on both sides, were from twelve hundred to fifteen hundred feet apart. It is also admitted by government witnesses that the speed of the Willets Point is approximately four knots per hour when going on one engine. The Hans Maersk was making eight knots per hour. Consequently, the vessels must have been approaching each other at a combined speed of not less than twelve knots per hour or twelve hundred feet per minute. Under the most favorable testimony given by the Willets Point witnesses, she did not stop her engines until ten seconds before the collision, and the same is true of the Hans Maersk.

I am persuaded, therefore, and I accordingly find that the period of emergency was not six minutes as Ruddy testified, but more nearly one minute. That the accident would not have happened had the steering gear of the Willets Point held seems admitted. That it might not have happened had her port engine been in action is possible, for, had she backed on that engine and gone ahead with the starboard engine, the sheer could have been broken, even though the steering gear was out of commission. It is to be noted that neither of these conditions was known to the pilot of the Hans Maersk. He knew of no danger until either the danger signals were given or the black shapes observed. From that time on it is not at all clear that he could have avoided collision.

In the circumstances, the rule in the City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84; The Ludvig Holberg, 157 U. S. 60, 15 S. Ct. 477, 39 L. Ed. 620; and The Umbria, 166 U. S. 404, 17 S. Ct. 610, 41 L. Ed. 1053, should be invoked, for that the Willets Point was at fault in respect to the condition of her port engine and steering gear is patent; whereas there is reasonable doubt as to the propriety of the conduct of the Hans Maersk. Since such doubt exists, it should under those authorities be resolved in her favor. Perhaps in the calm of post collision reflection it could be said that the Hans Maersk should have exercised some other maneuver, possibly stopped her engines sooner. But if the calculation of the emergency period is right, then it may be doubted whether even such maneuver would have avoided collision.

The libel of the Steamship Company of 1912 is sustained, and the cross-libel of the United States dismissed.

Decrees may be entered accordingly.