Cleora FRECHIN, Plaintiff-Appellant,

v.

John THORNTON, Defendant-Respondent.

No. 47048.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Dale Beal, Laurence R. Smith, Swofford, Schroeder & Shankland, Kansas City, for appellant.

E. E. (Tom) Thompson, F. Russell Millin, Thomas A. Sweeny, Kansas City (Pop-

ham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel), for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought to recover $30,000 for personal injuries sustained when the Studebaker automobile in which she was a passenger ran off the highway and overturned. The casualty occurred on U. S. Highway 71 by-pass about three miles north of Harrisonville, Missouri, at a point where a county gravel road runs east from said highway. As the southbound Studebaker approached the said intersection it was following a milk truck owned by the defendant. Plaintiff contended that the Studebaker was forced off the east side of the highway when the truck stopped suddenly in the highway and then made a left turn toward the county road. A trial resulted in a verdict for defendant. Plaintiff has duly appealed from the ensuing judgment.

On Sunday morning, May 15, 1955, plaintiff and her husband left their home in Kansas City, Missouri, and drove south intending to go to Osceola, Missouri, on a pleasure trip. Their testimony concerning the instant occurrence is correctly summarized in plaintiff's brief as follows: "The Studebaker automobile was traveling south on Highway 71 by-pass at approximately 50 miles per hour and 150 to 200 feet behind defendant's truck, and had been following the truck for a mile or more. The truck came to a sudden stop and no hand or mechanical signal or light of any kind was seen by either Mr. or Mrs. Frechin. Mr. Frechin applied his brakes. He didn't think he could stop in time and so let up on his brakes and pulled to the left. At the same time the Studebaker pulled to the left, defendant's truck pulled to the left and on over to the east shoulder and the Studebaker was forced to go into the ditch, there being less than a foot separating the vehicles when the Studebaker went into the ditch. The truck then turned to the right and stopped on the west side of the highway headed south and just south of the gravel road."

The testimony of the Frechins was corroborated by the testimony of Mr. Orie Melching, a Kansas City attorney. Mr. Melching stated that the car he was driving was following the Studebaker; that the defendant's truck was about 75 or 80 feet ahead of the Frechin car; that the truck stopped in the southbound lane and then turned across the northbound lane and onto the east shoulder; that the Studebaker angled across the highway just to the north of the truck and overturned in the east ditch and that the truck then pulled back across the highway and parked on the west shoulder.

John Van Alst, Jr., a photographer, was a passenger in the Melching car. He took two photographs at the scene within a few minutes after the casualty which were admitted in evidence. Plaintiff sustained serious injuries but the issues upon this appeal do not require a consideration thereof.

Defendant's version of the occurrence is accurately stated in plaintiff's brief as follows: "The truck was traveling 40–45 miles per hour as it came over the crest of the hill north of the point of the accident. Henry Hensley, driver of the truck, started slowing down for the turn onto the gravel road when he was back 500 feet. A hand signal was given and a signal given by the mechanical turn indicator and these signals were started when the truck was 400 feet back from the side road. Hensley stated that he saw no one through his rear-vision mirror when he commenced to give the signals. He stated that when he was 75 feet from the side road traveling 15–20 miles per hour he heard the squeal of brakes behind him and when he looked in his rear-view mirror the Studebaker was 100 feet behind him. Hensley testified that there was nothing wrong with the electrical turn signal that he knew of. (However, in a signed statement given to plain-

tiff's counsel about a week after the accident Hensley stated, 'I had electric signals, but it wasn't working right, so I had my hand out.') Hensley testified that after hearing the squeal and seeing the Studebaker he put the truck, which was then going 15–20 miles per hour, into third gear to give it more power and pulled to the right and stopped fifty feet south of the side road on the west side of the highway. He testified that he never drove the truck across on the east half of the highway."

Howard A. Todd testified for defendant. He stated that he was driving south on the highway in question and that the Studebaker passed his car a short distance to the north of the county road; that his car was immediately behind the Studebaker and was the first car to arrive at the scene after the car overturned. Mr. Todd testified that he was an eyewitness to the occurrence and in most respects his version of the incident corroborated the testimony of Mr. Hensley.

A highway patrolman arrived at the scene a short time after the casualty. He testified that skid marks made by the Studebaker began on the west side of the highway and extended for a distance of 136 feet at a southeasterly angle to the point where the car came to rest in the ditch. He stated further that Mr. Frechin made the following statement to him: "I was just driving along there about one hundred feet behind this truck and I looked up and he was stopping fast, and I guess it went out of control when I stepped on my brakes." Other facts will be stated in connection with our discussion of the points briefed.

The first point we shall consider is the contention of plaintiff that the court erred in excluding evidence that defendant had caused a new stoplight switch to be installed in his truck the day following the instant occurrence. Upon cross-examination defendant testified that he had checked the lights on the truck on the night before the casualty and that the taillight was working. He further stated that he had all of the mechanical work on his trucks done at the Acuff Garage at Harrisonville. The following interrogation then occurred:

"Q. Did you take either one of your trucks in to that particular garage to have the taillight fixed after this accident? A. How long afterwards would you have in mind?

"Q. Right away, the next day, a week later? A. I don't think so.

"Q. Well, wouldn't you remember whether or not you took the truck in to have the taillight fixed immediately after this occurrence, if you did have it fixed? A. You mean would I remember?

"Q. Yes, sir. A. I don't know. I have trucks in the garage every week, for minor repairs.

"Q. Well, now, this happened on Sunday, May 15, 1955, did you take either one of your trucks on the following Monday morning to any garage and have the taillight fixed? A. Not that I know of.

"Q. Well, do you think you did? A. No."

Thereafter, in rebuttal, the plaintiff called as a witness the bookkeeper from the Acuff Motor Company who produced an invoice in the name of John Thornton which indicated that a new stoplight switch had been installed on a "blue 1954 Chev. truck" on "5–16–55." The admissibility of the invoice was considered out of the hearing of the jury in a colloquy between court and counsel. Defendant objected upon the ground that it was not proper rebuttal. The objection was sustained. Thereafter the following occurred: "Mr. Price: Your Honor, you are putting us out on this. This would not preclude us from recalling Mr. Thornton for further cross-examination, now, would it? * * * The Court: I think you have a right to call Mr. Thornton. I think you have a right

to confront him with this and ask him if he recognizes it, and if says he knows what it is, does it bring to his mind any recollection, and if he says 'no,' then you are through. If he says 'yes,' why of course you can go ahead." Defendant, however, was not recalled by plaintiff for further cross-examination. Plaintiff thereafter made the following formal offer of proof: "Mr. Beal: I want to make an offer of proof that we again are asking the court to let us produce the invoice from the Herb Acuff Motor Company, and the lady who keeps the records, for the purpose of showing that there was trouble with the stoplight switch and that it was repaired on the day after the accident, the date being 5/16/55, and that we are offering it for the purpose to answer the cross-examination of the defendant, Mr. Thornton, who stated—who was asked the question several times, whether or not he had had either truck in the garage after the accident—immediately after the accident, and we feel that we should be entitled to make this offer of proof and that it is not part of the examination in chief. * * * Mr. Thompson: We make the same objection previously made and upon which the court previously ruled, plus the other objection that it would tend to show subsequent repairs which would be inadmissible on the theory of negligence. The Court: The same ruling."

Plaintiff concedes that the evidence would not have been admissible in chief on the issue as to whether the stoplight was operating at the time of the instant casualty. She recognizes the general rule that "Evidence of changes, repairs or precautionary measures taken after an accident ordinarily is not admissible to show antecedent negligence or as an admission of such negligence * * *." Hickey v. Kansas City Southern Ry. Co., Mo.Sup., 290 S.W.2d 58, 61. Plaintiff contends, however, that the invoice was admissible as rebuttal evidence because it impeached the foregoing testimony of the defendant. She cites cases such as Hickey v. Kansas

City Southern Ry. Co., supra, and Schloemer v. St. Louis Transit Co., 204 Mo. 99, 102 S.W. 565, where evidence of subsequent repairs was held to be admissible. However, those cases are distinguishable from the case at bar because of the particular factual situations involved.

We have concluded that the trial court properly excluded the proffered evidence because it was an effort to impeach the witness upon a collateral matter. "The law is well settled that where a witness is cross-examined as to a collateral matter, the cross-examiner is bound by the witness' answers and will not be permitted to offer evidence to contradict the witness relative to such answers." Weaver v. Scofield, Mo.App., 198 S.W.2d 240, 242. "The test as to whether the matter is collateral * * * is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case. If a fact may be shown in evidence for any purpose independently of contradiction, it is not collateral." 98 C.J.S. Witnesses § 633(b), p. 654. See also 58 Am.Jur., Witnesses, § 785, p. 433. We have already indicated that the invoice would not have been admissible upon plaintiff's case in chief upon the issue of defendant's negligence. It therefore follows that the evidence in question related to a collateral matter. We accordingly rule that plaintiff was bound by the answers of defendant which she elicited on cross-examination (as heretofore set out) and could not impeach defendant by evidence (the invoice) contradictory thereto. 58 Am.Jur., Witnesses, § 784, p. 433; Weaver v. Scofield, supra; Gildehaus v. Jones, 356 Mo. 8, 200 S.W. 2d 523[8]; Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678; Harter v. King, Mo.App., 259 S.W.2d 94. Moreover, we observe that plaintiff is not in a strong position to urge the alleged error in excluding the invoice since her counsel did not take advantage of a favorable ruling of the court by recalling defendant for further cross-examination and confronting

him with the invoice. Had this been done it is very likely that defendant would have admitted that the truck had been repaired at the time and place shown on the invoice and plaintiff would have had no reason for further complaint.

■ The next point briefed by plaintiff relates to the alleged error of the court in refusing to permit John Van Alst to testify in rebuttal. As heretofore stated, Orie Melching testified that his car was immediately behind the Studebaker and was the first car at the scene after the Studebaker overturned. He further testified that Mr. Van Alst took two pictures within a few minutes after the casualty. Mr. Frechin' testified that Mr. Van Alst helped get his wife out of the car and also took some pictures shortly thereafter. Contrary to the foregoing testimony, Howard Todd testified for defendant to the effect that his car was immediately behind the Studebaker and was the first to arrive at the scene after the Studebaker overturned. He also stated that he stayed at the scene for ten or fifteen minutes and did not see anyone taking pictures.

Mr. Van Alst did not testify during plaintiff's case in chief. He was offered by plaintiff in rebuttal to refute the testimony of Mr. Todd which tended to prove that Mr. Melching was not an immediate eyewitness to the occurrence, and that Mr. Van Alst was not there immediately after the casualty taking the pictures that were admitted in evidence. An objection to plaintiff's offer of proof was sustained.

We do not think the court erred in refusing to admit the proffered testimony. While such evidence would have contradicted the testimony of Mr. Todd, it was merely cumulative of the testimony which had been given by Mr. Melching and Mr. Frechin during the presentation of plaintiff's evidence. Plaintiff was not entitled, as a matter of right, to the admission, in rebuttal, of evidence which was merely cumulative or confirmatory of that already adduced by her in her case in chief. The

admission or exclusion of that testimony rested within the sound discretion of the trial court. Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' R. Co., 230 Mo. 59, 130 S.W. 288; Picarella v. Great Atlantic & Pacific Tea Co., Mo. App., 316 S.W.2d 642. No abuse of that discretion is indicated.

■ Plaintiff also contends that the court erred in giving defendant's Instruction No. 8 which reads as follows: "The court instructs the jury that if you find and believe from the evidence that on the occasion in question Henry C. Hensley at all times immediately prior to the occurrence in question, operated defendant's truck upon the right half (west) of the paved portion of U. S. Highway No. 71 by-pass, and did not operate said truck to the left (east) of the center line of said highway immediately prior to the overturning of the automobile in which plaintiff was riding, if you so find, then you are instructed that plaintiff is not entitled to recover, and your verdict must be in favor of defendant, Mr. Thornton, and this is true, regardless of any other fact, circumstance or condition in evidence." That instruction must be considered in connection with plaintiff's Instruction No. 1 which hypothesized (omitting "if you so find," etc.) that defendant "failed to exercise the highest degree of care and was negligent in the operation of said truck in that he suddenly stopped or slackened the speed of his truck in the path of the automobile in which plaintiff was riding, and that in so stopping or slackening the speed thereof, defendant failed to give a warning of the movement of said truck, and that after the automobile in which plaintiff was riding attempted to stop and go around defendant's truck defendant turned to the left across the center line of said highway and upon the east shoulder of the highway in front of the automobile in which plaintiff was riding, and that defendant failed to give a warning of the movements of his said truck * * *."

**128**

It is admitted by plaintiff that the instruction complained of submits the converse of a fact which the jury was required to find in her main instruction, i. e., "defendant turned to the left across the center line of said highway." Plaintiff also concedes that a defendant is entitled to submit the converse of any essential element of plaintiff's case. See Conser v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 266 S.W.2d 587. However, plaintiff says that Instruction No. 8 is erroneous because the factual situation submitted in Instruction No. 1, of which Instruction No. 8 submitted the converse, was not an essential element of her case.

Instruction No. 1 submitted defendant's negligence in suddenly stopping or slackening the speed of his truck in the path (west lane) of the Studebaker, without warning, *and,* when the driver of plaintiff's car attempted to go around the truck, defendant, without warning, turned the truck across the highway, in front of said automobile, to the east shoulder, etc. Plaintiff contends that the only essential element of her case was a finding that the speed of the truck was suddenly slackened or stopped without giving a warning. We do not agree. Both of the foregoing theories of negligence (suddenly stopping in west lane and turning across east lane) were pleaded, supported by evidence, and conjunctively submitted. The jury was required to find both as a predicate to a verdict for plaintiff. In offering Instruction No. 1 plaintiff elected to submit the case in that manner. Having done so she cannot now (after receiving an adverse verdict) be permitted to successfully contend that only one of the two theories submitted was essential and the other surplusage. Lindquist v. Kansas City Public Service Co., 350 Mo. 905, 169 S.W.2d 366; Oshins v. St. Louis Public Service Co., Mo.Sup., 254 S.W.2d 630.

The final contention briefed by plaintiff is that the trial court erred in overruling her pre-trial motion to be allowed to inspect and photograph the truck in question. Since that ruling was not complained of in plaintiff's motion for new trial it has not been preserved for review, Brock v. Gulf, Mobile & Ohio R. Co., Mo.Sup., 270 S.W.2d 827, and we are of the opinion that the circumstances presented do not call for a consideration of that point under 42 V.A.M.S. Supreme Court Rule 3.27.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.