William C. WIESEMANN, Plaintiff-Appellant,

v.

Edward PAVLAT, Defendant-Respondent.

No. 32492.

St. Louis Court of Appeals.

Missouri.

Feb. 27, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied March 17, 1967.

Padberg & Raack, Godfrey P. Padberg, St. Louis, for appellant.

Evans & Dixon, Ralph C. Kleinschmidt, St. Louis, for respondent.

PER CURIAM:

This appeal presents a question of proper use of MAI right-of-way instructions in a boat collision case governed by maritime law. The suit was for damages suffered by the parties when their outboard motorboats collided on the Lake of the Ozarks. Each claimed the right of way under maritime law. The jury found against plaintiff William C. Wiesemann on his petition and against defendant Edward Pavlat on his counterclaim. The defendant was satisfied with the dogfall, but plaintiff moved for a new trial and appealed when that was denied.

The ultimate issue below was who had the right of way. Plaintiff's verdict director said he should recover if the defendant negligently failed to yield the right of way to plaintiff. Conversely, the defendant's contributory negligence instruction exonerated defendant if the jury found plaintiff had

negligently failed to yield the right of way to the defendant. The plaintiff's principal point here is that the defendant's right-of-way submission was not supported by the evidence.

Plaintiff contended he and the defendant were on a *crossing* course, and plaintiff had the right of way because he was on the defendant's right-hand side. Defendant contended he and the plaintiff were on an *approaching* course, and he had the right of way to pass to the right side of plaintiff's course. Thus, the factual issue was whether the boats were on a crossing course or on an approaching course when the risk of collision arose. The parties' rights are to be determined by the evidence and by maritime law, which the parties agree controlled their rights.

The two maritime rules of right of way here are simple. We paraphrase §§ 343 and 344 of Title 33, U.S.C.A. The "starboard side rule" says in effect that when two boats are crossing so as to involve risk of collision, the boat which has the other to its right shall keep out of the way of the other. In other words, the boat on the right has the right of way. On the other hand, the "end-on rule" says in effect that when two boats are meeting head on, or nearly so, so as to involve risk of collision, each shall alter course to the right so as to pass safely. In other words, each has the right of way on his own right-hand side.

We find it impossible to make a cogent statement of all the evidence. No doubt it was hard for counsel to elicit clear, verbal descriptions of the lake site where the collision developed and occurred. And it was hard for the witnesses to state precise directions, distances, speeds and relative positions. By tacit agreement counsel avoided these difficulties: they used a plat and three aerial photographs on which they pointed out their courses and positions leading up to the collision. The exhibits were neither referred to by number nor marked as the witnesses testified. Page after page of the transcript has disconnected phrases,

such as "right here," "along there," "like so," "this way" and "that way." Gestures were used freely to describe boat movements and positions; we notice scores of reporter's comments—"pointing," "indicating" and "demonstrating." These bits and pieces of testimony illustrate our difficulty:

"Q. What relative direction was your boat going at the time you first saw the Pavlat boat? Use my pointer. Put it level like this. A. [By plaintiff] My bow was somewhere like so (indicating).

"Q. We are demonstrating in front of the jury, and if I understand correctly, Mr. Pavlat is going in the direction of my pencil which is along the jury rail to the rear, and the pointer, representing your boat, is going toward the jury box and a little bit to the south, a little bit south of west. Is that correct? A. No, sir, you are just about west right now with this."

*　　*　　*　　*　　*　　*

"Q. Let's say that this back of this picture is the cove (pointing),— A. [By defendant] Uh-huh.

"Q. —and let's say this part is your boat right here (pointing), and this part is Wiesemann's boat (pointing). When you were coming up, you were generally in this area (pointing); isn't that how you described it? The yellow pencil was him and the pointer was you? A. Yes, but he was going this way more when I first saw him (indicating)."

Helpful as these pictorial and gesticulative demonstrations were to the trial court and the jury, they are merely frustrating to us. What shed light in the courtroom merely casts shadows in the transcript. The transcript does show a few reasonably definite facts and inferences about the collision, enough we think to enable us to decide the issues raised by the plaintiff-appellant.

This much seems certain: The boats collided in a cove off the main body of the lake. The closed end of the cove was to the south and the open end to the north. The defendant started from the south end of the cove and moved north toward the lake. He was going 20-some miles an hour. Ahead of him and to his right the plaintiff had left the east bank of the cove and was moving toward the west bank, going about 20 miles an hour. The plaintiff was pulling a water skier at the end of a 75-foot line. Plaintiff's course was not straight, but in what he called "a sweeping left turn," "a big circle." Thus, the plaintiff left the east bank of the cove headed in a northwest direction, at an acute angle to defendant's northward course; then, as plaintiff curved to his left, he was headed west at a right angle to defendant's course; finally, as plaintiff curved further to his left, headed southwest, he was approaching defendant's course at an obtuse angle. Plaintiff and defendant saw each other when still 150 yards apart. Had both boats then maintained their speeds and courses, the plaintiff's boat would have passed safely in front of the defendant's boat. But even so, the water skier 75 feet behind plaintiff might have been endangered by the crossing.

At about the same moment plaintiff and defendant took corrective action. The plaintiff "adjusted" his course to his left; we do not know how much, but this turn would have avoided a crossing and plaintiff would have passed parallel with and to defendant's right side. Simultaneously with plaintiff's left turn in front of defendant, the defendant reduced his speed and turned slightly to his right. These turns by each boat brought them almost into a head-to-head position, distance unknown, plaintiff heading south and defendant still heading north. Then the final evasive actions. The defendant stopped his motor and turned hard right; the plaintiff turned hard left. The boats collided—the prow of defendant's boat against the right-front side of plaintiff's boat.

On this evidence, plaintiff contended that the risk of collision arose when the boats were on a crossing course, and he had the right of way under the "starboard side rule" because he was on the defendant's right-hand side. To the contrary, defendant con-

tended that the risk of collision arose when the boats were approaching each other nearly "end on," and he had the right of way to pass by giving way to the right—which he did, but which plaintiff failed to do. These contrary contentions were presented to the jury by the instructions.

■ Plaintiff's verdict directing Instruction 2 was a combination MAI 17.04–17.08. It told the jury to find for plaintiff if defendant negligently failed to yield the right of way to plaintiff. Defendant's Instruction 4 was a combination MAI 28.01, 17.04–17.08. It told the jury to find for the defendant on plaintiff's claim if the plaintiff was contributorily negligent in failing to yield the right of way to the defendant. Thus, plaintiff relied on his own right of way under the "starboard side rule" to sustain his claim, and defendant relied on his own right of way under the "end-on rule" to defeat that claim. Both parties recognized their obligation under MAI 14.01 to define right of way, and each offered his own definition. The trial court combined the two definitions into one instruction and gave a modified MAI 14.02, marked Instruction 10:

"[1] The phrase 'right of way', as used in these instructions, means the right of one boat to proceed ahead of the other.

"[2] When two motor boats are crossing so as to involve risk of collision, other than when one vessel is overtaking another, the vessel which has the other to starboard or right shall keep out of the way of the other.

"[3] When two motor boats are meeting end on, or nearly end on, so as to involve risk of collision, it shall be the duty of each to pass on the port [left] side of the other, and to alter course to starboard [right] sufficiently so that this can be done in safety."

We note that a right of way exists only when the relative position of the two boats involves a risk of collision.

Plaintiff levels three attacks at the defendant's right-of-way submission under In-

structions 4 and 10: that only one party could have the right of way, so it was error to allow both parties to instruct on right of way; that defendant's right-of-way submission under the "end-on rule" was not supported by evidence; and that defendant had not pleaded right of way as a defense.

■ Plaintiff first challenges the dual right-of-way submission. Having submitted his own case under the "starboard side rule," plaintiff says it was inconsistent for the court also to submit defendant's contributory negligence defense under the "end-on rule." Plaintiff's point: "Only one party had the right of way in a two vehicle collision and to allow both parties to instruct on violation of right of way is misleading and confusing to a jury." Plaintiff is correct in his premise that only one party to a collision has the right of way. But he errs in his conclusion that it is error to submit separate right-of-way instructions to meet opposing factual situations. Which one of the two parties had the right of way depended on what facts the jury believed. Where evidence shows two conflicting factual situations, each of which supports a claim to the right of way, then each party is entitled to submit his case on the other's failure to yield the right of way. Klee v. Bryan, Mo. App., 346 S.W.2d 695[2–4], and Jameson v. Fox, Mo.App., 269 S.W.2d 140[5].

■ We have considered plaintiff's cited cases on this point. Pigg v. Bridges, Mo., 352 S.W.2d 28, is typical. It condemns an instruction that requires a finding of two inconsistent facts submitted *con*junctively. But the opinion approves an instruction that alternatively submits inconsistent facts in the *dis*junctive. Here, the right-of-way submissions were in the disjunctive, and it was for the jury to determine which one of the two factual situations existed, and to apply the appropriate right-of-way rule to that situation.

■ Plaintiff's major attack on defendant's right-of-way submission under the "end-on rule" is that there was no evidence

to support it. In making this determination we may consider only the evidence most favorable to the defendant. Emert v. St. Louis Public Service Co., Mo., 370 S.W.2d 366[3]. We have noted that both the "starboard crossing rule" and the "end-on rule" give a vessel the right of way only when a risk of collision is involved. Plaintiff now contends all the evidence showed the risk arose when the boats were on the initial crossing course—that only the "starboard crossing rule" was supported by evidence. To the contrary, defendant contends the favorable evidence showed the risk of collision arose later, when the boats were in an end-on course. We agree. And we recite evidence favorable to defendant, much of it from plaintiff himself: In a pre-trial deposition, plaintiff was asked if his course was a 180-degree turn.

"A. No, I was at the boating dock (indicating) and I was in this big circle like so. There was another cove out this way (indicating), this big cove that the other fellow was coming down, and actually I was in this big turn and by the time I finished I was heading back up the same direction this other gentleman was coming.

"Q. In other words, the other gentleman was coming north when you finished your turn and you were headed south?

"A. That's right; yes, sir."

Plaintiff and defendant both said that had they stayed on their initial courses plaintiff's boat would have passed safely in front of defendant's boat. Plaintiff said that it was to protect his skier that he turned further left, "figuring" this would let the two boats pass parallel without plaintiff's crossing in front of defendant's boat. This further left turn put plaintiff and defendant on parallel courses, head-to-head or nearly so. Defendant then turned to his right, in accordance with the "end-on rule"; but plaintiff then turned hard left, contrary to that rule, into the collision. Plaintiff admitted there was risk of the boats colliding before

he made his last change of course to his left. In the face of this testimony favorable to the defendant, we cannot agree with plaintiff that defendant's right-of-way submission under the "end-on rule" was unsupported by evidence.

Plaintiff cites several maritime cases to buttress his own theory of right of way under the "starboard side rule": "U. S. v. S. S. Malden, D.C., 224 F.Supp. 705; The Gulfstar, 3 Cir., 136 F.2d 461; Tidewater Associated Oil Co. v. U. S., 60 F.Supp. 376; The Fred B. Dalzell, Jr., C.C.A.N.Y., 45 F. 2d 580; The Hans Maersk, D.C.N.Y., 39 F. 2d 98." The principles announced there are based on predetermined factual situations in which the "starboard crossing rule" is applicable, or on predetermined factual situations in which the "end-on rule" is not applicable. Under the evidence here the jury did not have to accept plaintiff's contention that a risk of collision arose in a crossing situation, and it could have accepted defendant's version that the risk of collision arose in an end-on situation. So, the cited cases do not apply to the point plaintiff has briefed: that defendant's right-of-way submission was not supported by evidence.

■ Plaintiff's last attack on defendant's right-of-way submission is that it was not specifically pleaded by the contributory negligence allegations in defendant's answer. This objection was not raised when the instructions were given, nor by plaintiff's after-trial motion. It is first mentioned in plaintiff's brief; that is too late. The point is not preserved for review. Civil Rules 70.02, 79.03 and 83.13(a), V.A.M.R.

■ Plaintiff also charges that the right-of-way definition Instruction 10 was defective in form. He says it "does not involve right of way," is not "related to any other instruction," and is confusing. As mentioned earlier, plaintiff's verdict director told the jury to find for plaintiff if he had the right of way; and defendant's affirmative defense instruction told the jury to find for defendant if he had the right of

 

way. Then, in accordance with MAI 14.01, each party defined right of way by separate instructions, which the trial court combined into one. The first paragraph of Instruction 10 substantially followed MAI 14.02, saying that right of way meant the right of one boat to proceed ahead of the other. By the second and third paragraphs the court tersely stated the "starboard crossing rule" and the "end-on rule" as declared by the maritime statutes. True, neither the second nor third paragraphs used the words "right of way," but neither do the federal statutes. The basic flaw in plaintiff's attack, however, is that the asserted error in defendant's third paragraph is common to plaintiff's own definition in the second paragraph. Reading Instructions 2, 4 and 10 together, we find neither misdirection nor confusion. Instead, we find a common sense application of MAI to a unique submission.

Plaintiff's final point challenges the trial court's refusal to permit him to cross-examine the defendant about an inconsistency between (a) defendant's testimony that he had had no medical treatment, and (b) a statement in his abandoned counterclaim that he had incurred medical expense. By this original counterclaim the defendant pleaded medical expense. By his amended counterclaim, however, he made no such claim, and on cross-examination denied he had gone to a doctor. Then plaintiff offered the abandoned counterclaim in evidence, but the court sustained defendant's objection.

Plaintiff argues he had a right to show the original claim of medical treatment to impeach the defendant. True, the original counterclaim was inconsistent with defendant's testimony of no medical treatment. When defendant abandoned his claim for medical expense, however, that issue dropped out of the case. It then became a collateral matter. Two rules uphold the court's ruling: A cross-examiner is bound by the witness's answer to a question on a collateral matter and may not introduce

other evidence just to contradict the answer. Frechin v. Thornton, Mo., 326 S.W. 2d 122[1]. Further, a trial court has broad discretion in the scope of cross-examination, particularly as to collateral matters, and its ruling will stand unless there is an abuse of discretion. Huston v. Hanson, Mo., 353 S.W.2d 577[3, 4]. The trial court did not err in refusing to permit cross-examination of defendant on his abandoned counterclaim.

Finding no reversible error, we order the judgment affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.