## WRIGHT-DALTON-BELL-ANCHOR STORE COMPANY v. WILLIAM N. BARRON, Appellant.

### Division One, August 15, 1923.

1. **LEASE: Construction: Rules Applicable to Other Contracts.** The fixed rules of construction of contracts apply to a lease, which are: (a) That the prime purpose is to ascertain the intention of the parties; (b) in so doing, the whole instrument is to be considered, rather than segregated portions of it; (c) if possible, a construction will be adopted which will give effect to all portions of it; (d) if its language is plain and unambiguous, the intent must be gathered from the language used therein, and (e) if its language is ambiguous and doubtful, extraneous matters may be considered in determining the intention of the parties.

2. ————: **Long Term: Buildings Erected by Lessee: Obligation of Lessor to Buy.** The long-term lease construed in this case did not bind the lessor to buy the buildings, erected on the leased premises by the lessee, upon the termination of the lease.

3. ————: ————: ————: ————: **"May Be Sold."** The contract for the lease of a vacant lot for a long term of years declared that all buildings placed upon the lot by the lessee were to be and remain his property "and at the termination of this lease may be sold by him" to the lessor, "if the parties can agree upon the amount, if not then" the lessee "is to have the right to remove the said property from the premises or to sell it to some other person or to re-lease anew upon terms agreeable to both parties." *Held*, that, the term of the lease having expired, the lessor was not bound to take the buildings erected by the lessee, nor can he be compelled to pay for them upon his refusal to take them. The word "may" expresses no binding obligation, and the other options expressed (the right to re-lease, to remove the buildings, to sell them if not

removed) show that the word was not used in the sense of "must" or "shall;" but its use and the other options expressed mean that the lessor was not compelled to buy, nor the lessee compelled to sell.

4. ——: ——: ——: ——: By Further Agreement to Arbitrate. Nor were these foregoing optionary terms of the contract transmuted into an absolute obligation on the part of the lessor to buy or on the part of the lessee to sell, by its further terms that "in default of any agreement between the parties as to the purchase price of said buildings at the termination of this lease, the same shall be referred to a board of three arbitrators" who "shall fix the price of said buildings, and we hereby agree to abide by the decision of said board." This agreement to arbitrate the price could serve no useful purpose unless there was a precedent agreement on the part of the lessor to buy the buildings and on the part of the lessee to sell them, or an election by the lessor to buy and by the lessee to sell; and the preceding clause having given the lessee four options, namely, to sell to the lessor, to re-lease, to remove the buildings or to sell them, the lessor was not by this arbitration clause compelled to buy.

5. ——: ——: ——: ——: By Requirement for Cheap Building: If Purchased. The vacant lot adjoined on the south another belonging to the lessee on which was a building known as the Orchard Building, and the lease, for a term of sixteen years and nine months, provided for the erection of "a cheap one-story building" to be erected by the lessee on the leased lot, and that the north wall of said building "shall be the south wall of the Orchard Building" and "it is expressly understood as one of the considerations of this contract that, if, at the expiration of this lease" the lessor "shall purchase said building, no account of the north wall (the Orchard Building wall) of said building shall be taken in computing and determining the price to be paid, for said building" by the lessor. *Held,* that the significance of these terms lies in the word "if." The wall was to be considered in computing the price "if" the lessor "shall purchase said building," but it was not to be considered if he did not choose to purchase. *Held,* also, that the stipulation for a "cheap building" does not comport with an intended obligation to purchase, since the lessor, if he had meant to bind himself to buy, would have wanted a permanent building. *Held,* also, that these clauses did not enlarge the preceding agreement, that at the termination of the lease the building erected by the lessee "may be sold by him" to the lessor, into a binding obligation upon the lessor to buy the building or to pay for it.

300 Mo.—28

Certified from Springfield Court of Appeals.

REVERSED.

*John F. Woody* and *Arnot L. Sheppard* for appellant.

(1) The contract sued on does not obligate respondent to sell to appellant, or appellant to purchase from respondent, anything at the expiration of the lease. (2) Even if said contract had bound appellant to purchase, yet it did not bind respondent to sell to appellant; and is, therefore, unilateral and void. Blaine v. Knapp & Co., 140 Mo. 241; Campbell v. Handle Co., 117 Mo. App. 19; Steffen v. Railroad, 156 Mo. 322; Hudson v. Browning, 264 Mo. 68; Iron & Rail Co. v. Railroad, 148 Mo. App. 173; Quigley v. King, 182 Mo. App. 196; Zerr v. Klug, 121 Mo. App. 292; Mers v. Ins. Co., 68 Mo. 127; Reigart v. Coal & Coke Co., 217 Mo. 142; Glass v. Rowe, 103 Mo. 539; Warren v. Costello, 109 Mo. 343; Lipscomb v. Adams, 193 Mo. 545; Zorkowski v. Astor, 156 N. Y. 393; Pearce v. Turner, 150 Ill. 116. The contract sued on herein did not give respondent an option, which term has a well defined legal meaning. Montgomery v. Hundley, 205 Mo. 152. (3) Suit cannot be brought on an express contract and recovery had in *indebitatus assumpsit* on the *quantum meruit;* nevertheless the trial court permitted this to be done. American Surety Co. v. Fruin-Bambrick Const. Co., 182 Mo. App. 667; Irwin v. Wilhoit, 199 S. W. 588; Williams v. Railway Co., 112 Mo. 463; Quigley v. King, 182 Mo. App. 205; Walker v. Bohannan, 243 Mo. 205; Michael v. Kennedy, 166 Mo. App. 466; Cole v. Armour, 154 Mo. 350; Koons v. Car Co., 203 Mo. 254; Cement Co. v. Ullmann, 159 Mo. App. 251.

*E. R. Lentz, David W. Hill* and *Sam M. Phillips* for respondent.

(1) At the termination of the lease offered in evidence, by the terms thereof, plaintiff owned the brick

building in question, which was on defendant's land and plaintiff had the right to elect, as provided by the lease, upon any of the following ways of disposing of its building, to-wit:  First, it (quoting from the lease) "may be sold by him to the party of the first part, if the parties can agree upon the amount;" if not, second, "then the party of the second part is to have the right (not 'shall') to remove said property from said premises;" or, third, "to sell it to some other person or persons;" or, fourth, "to re-lease anew upon terms agreeable to both parties hereto." Plaintiff by the terms of the lease had the right of electing in which of the four ways above set forth it would dispose of its building. Such a construction of the contract does not render it unilateral and unenforceable. On the contrary such contracts are uniformly upheld by the courts. 24 Cyc. 993, 1107; Pearce v. Golden, 8 Barb. (N.Y.) 522; Powell v. Pierce, 103 Va. 526; King v. Wilson, 98 Va. 259; Ward v. Toronto, 26 Ont. App. 225. (2) Where the lease contained a covenant that the lessor should renew at a rent to be fixed by umpires or that at his option he should, instead of renewing, pay for the building at a price similarly fixed, it was held that the election of the lessors to take the building bound him, and that the lessee was entitled to the benefit of the finding of the umpires. Crosby v. Moses, 48 N. Y. Sup. Ct. 146. (3) In the following cases the lease between the parties in some instances gave the lessor and other cases the lessee the right of election, and such right was upheld by the appellate court. Newton v. White, 115 Va. 844; Doyle v. Fishport, 128 N. Y. Supp. 898; Smith v. Church, 107 N. Y. 610; Pearce v. Golden, 8 Barb. (N. Y.) 522; Powell v. Pierce, 103 Va. 526;  King v. Wilson, 98 Va. 259; Ward v. Toronto, 26 Ont. App. 225; Howe's Cave Assn. v. Houck, 141 N. Y. 606; Bullock v. Grinstead, 95 Ky. 261; Phillips v. Reynolds, 20 Wash. 374, 72 Am. St. 107. Alternative promises are often made in contracts with right of election given to the other party and such contracts are enforceable. Ramsey v. Walthan, 1 Mo. 396; 13 C. J. 629, 630. A contract may be optional

with one party and obligatory on the other, or it may be obligatory at the election of one of the parties. Kramer v. Ewing, 61 Pac. 1064; 2 Parsons on Contracts (9 Ed.) pp. 809, 810. (4) The defendant's grantor signed the contract in suit, and by which defendant is bound, providing that plaintiff could sell the house in question to defendant. This meant that defendant would buy the house because plaintiff could not ''sell'' to defendant without defendant buying. The term ''sell'' on one part implies buying on the other part. But even though such was not the case, mutuality in a contract of this kind would be implied by law. See 13 C. J. 334; Lewis v. Atlas Ins. Co., 61 Mo. 538; Rozier v. Railroad Co., 147 Mo. App. 290; Robert E. Lee Mining Co. v. Smelting Co., 16 Colo. 118. (5) In the absence of the contract sued on at the end of its tenancy of defendant's real estate, the brick building in question being located thereon, being a real fixture it would belong to the owner of the land. Schlemmier v. North, 32 Mo. 206; Beckweth v. Boyce, 9 Mo. 561; Donnewald v. Turner, 44 Mo. App. 350; 26 C. J. 696, note 24. This rule of fixtures was changed by the contract and plaintiff, by agreement of the parties, was given rights by the contract that he did not otherwise possess and among others the right to sell the building to the defendant, to remove it, to sell it to another, or re-lease it to the defendant. Therefore when the term ''may'' was used in the expression in referring to the building ''may be sold by him to the party of the first part'' means that plaintiff was granted the right to sell the building to the defendant, and this case grows out of the attempt by plaintiff to exercise a right which was given to him by agreement of the parties by the written contract.

GRAVES, P. J.—This case comes to this court upon certification by the Springfield Court of Appeals. The reason assigned for the certification was a conflict between their opinion and the opinion of the St. Louis Court of Appeals in the case of Knight v. Orchard, 92 Mo. App.

466.  The Court of Appeals in its opinion gives, among other things, the following outline of the facts of the case:

"This is an action growing out of a lease on a lot in Poplar Bluff, Missouri.  The cause was tried to a jury, and plaintiff recovered judgment for $4999.  Defendant filed motion for new trial and in arrest, and these being overruled, he appealed.

"On June 1, 1901, Mrs. W. D. Knight, the then owner, leased to plaintiff, for the term of sixteen years, nine months and eight days, a certain described lot, 57 by 104 feet, fronting east on Main Street in the city of Poplar Bluff, at $40 per month, the lessee to pay all taxes, general and special.  Later defendant purchased the leased lot from Mrs. Knight, and it is conceded that he is responsible under the lease contract as Mrs. Knight would have been.  Plaintiff owned the ground immediately west of the leased lot, and the building immediately north, designated as the Orchard Building.  One Saracini owned the building immediately south of the leased lot.  The Saracini wall extended west 45 feet, and the Orchard wall extended west 60 feet.  Plaintiff by contract with the owner strengthened the Saracini wall, and extended it west 75 feet, and extended the Orchard wall west 40 feet, so that the space enclosed included all the leased lot and a parcel of ground to the west thereof 16 by 57 feet.  Using the Saracini and Orchard walls thus extended, plaintiff erected a building covering the leased lot, and it and its tenants occupied this building under the contract until the expiration of the lease.  It was for the value of this building as limited by the lease contract for which this suit was brought.

"Plaintiff sued in two counts, one on the theory that defendant under the lease contract was compelled to buy, and the other on the theory of conversion.  Defendant's answer sets up many and various defenses, but its general denial was sufficient to raise the decisive issue.  At the close of the case defendant requested an instruc-

tion in the nature of a demurrer. The court directed a verdict for the defendant on the second count, and the cause is here on the count based on the theory that defendant, under the contract, was compelled to buy the improvements. Defendant makes many assignments, but we think it unnecessary to consider any except the assignment based on the court's refusal to grant defendant's peremptory request for a directed verdict on count one.

"Plaintiff construed the lease contract to mean that under its terms and provisions plaintiff at the expiration thereof might elect to sell to defendant, and that if it did so elect, defendant was compelled to buy the improvements erected on the leased lot. Just a short time prior to the expiration of the lease plaintiff served written notice on defendant that it elected to sell to him, but he ignored this notice. He had previously advised plaintiff's president that he would not buy the building. The paragraphs of the lease contract upon which plaintiff relies to support its contention that defendant must buy or be responsible for the value of the improvements as limited by the contract are as follows. The numbers are added by us for convenience:

" '1. All buildings and improvement of every kind placed upon the premises by the party of the second part [plaintiff] are to be and remain the property of the said party of the second part, and at the termination of this lease may be sold by him to the party of the first part, if the parties can agree upon the amount, if not, then the party of the second part is to have the right to remove the said property from the premises or to sell it to some other person or persons or to re-lease anew upon terms agreeable to both parties hereto.

" '2. In default of any agreement between the parties hereto as to the purchase price of said buildings at the termination of this lease, the same shall be referred to a board of three arbitrators, two of whom shall be chosen respectively by the parties hereto and the third

to be chosen by the parties thus chosen, which board of arbitrators shall determine the matter thus referred to them as soon as may be and fix the price of said building and improvements as provided in this contract and the judgment and finding of said board is to be conclusive and binding to both parties alike, and we hereby agree to abide by the decision of said board of arbitrators as to all matter submitted to them for their decision.

" '3.   The party of the second part agrees to erect a cheap one-story building on the premises herein described which building shall cost less than five thousand dollars, the north wall of said building shall be the south wall of the building commonly known as the Orchard Building.   It being expressly understood as one of the considerations of this contract that if at the expiration of this lease the party of the first part shall purchase said building no account of the north wall [the Orchard wall] of said building shall be taken in computing and determining the price to be paid for said building by the party of the first part.   It being further agreed that while the party of the second part, its successors or assigns, may remain the absolute owners of said wall, the party of the first part, its [her] successors or assigns, shall enjoy forever the same rights and privileges as if she were the absolute owner thereof.

" '4.   Within ninety days from this date the party of the second part agrees to deliver to the party of the first part, a full and complete statement of the plans and specifications of the building proposed to be erected on said premises, together with an estimate of the cost of said building, said statement and estimate to be sworn to by a competent architect.

" '5.   It is further agreed by and on behalf of the party of the first part that the party of the second part shall have the right to sell or assign this contract, or may sublet under this lease, subject, however, to all the conditions of this lease.

" '6.   It is further agreed that all the conditions and covenants contained in this lease shall be binding

upon the heirs, executors, administrators, successors and assigns of the parties to these presents respectively.'

''It appears from paragraph 1 that all buildings and improvements placed upon the leased premises by plaintiff were to be and remain its property, and at the termination of the lease said improvements may be sold to first party, in whose shoes defendant now stands, if the parties can agree upon the amount.''

The answer is not fully outlined in the foregoing, but reference thereto can be made, if found necessary, in the course of the opinion. The first crucial question is, as stated by the Court of Appeals, whether or not (under the lease provision) the defendant can be forced to purchase the improvements, put on by plaintiff, or in lieu of an actual purchase by agreement, be forced to pay the value thereof.

The Court of Appeals reversed outright the judgment of the lower court. In so doing it held that the terms of the lease did not require defendant, as a grantee of the lessor, to purchase unless he so desired, and that he was not liable for the value of the building, under count one of the petition.

I. It is apparent from the foregoing statement that all questions raised, or which might be raised in this case, are secondary to the vital question lying at the threshold of the case, viz., what is the meaning of this lease contract?. Appellant contends that he, as successor of the lessor in the lease (although bound by the terms of the lease as fully as the said original lessor), is not obligated to purchase the house per force of the terms of the lease, and not being so bound, could not be held liable, in an action upon the lease contract, for the value thereof, which was the result of the trial in the lower court. Respondent contends contra, and the lower court took the view of the respondent.

In the briefs much is said of the rules of construction of contracts. No serious conflict in the cases upon these rules appears. The rules are firmly fixed. Among

such rules may be found (1) that the prime purpose is to ascertain the intention of the parties, (2) in so doing the whole instrument must be considered, rather than segregated portions thereof, (3) if possible a construction must be given which will give effect to all portions of the instrument, (4) if the language is plain and unambiguous, the intent must be gathered from the language used, and (5) if the language is ambiguous and doubtful then extraneous matters may be considered in determining the intent of the parties. These and other rules of construction need not be reiterated. Under them we shall proceed in determining what the parties intended by this lease contract upon the disputed issue involved between the parties to this suit.

*Rules of Construction.*

II. The first count upon which the verdict and judgment for plaintiff were obtained was one upon the contract. The proof tended to show that the improvement made exceeded very much the sum of $5000. The contract provided that the improvement should be less than $5000, and in this count the sum sued for is $4999, the exact amount of the verdict and judgment. So that it clearly appears that this count rested upon the contract, and this question is not questioned in the briefs.

*Obligation to Buy.*

Does this lease require the defendant (the assignee of the lessor, and bound as was the lessor) to take this building? If it does, then as defendant refused to take and pay for it, and refused to arbitrate the price thereof, he may be liable for the value fixed by the jury, instead of the value fixed by arbitration. If, on the other hand, he was not bound to take the building, under the contract, then there could be no liability in an action upon the contract, and such is the action here.

The paragraph of the contract which has, for convenience, been numbered 1, provides (1) that the improvements shall remain the property of the lessee, (2) that upon the termination of the lease such property

"*may* be sold . . . to the party of the first part, *if the parties can agree upon the amount,*" (3) if they cannot agree, then the lessee shall have the right to sell to some other party, remove the property from the premises, or to "re-lease upon terms *agreeable to both parties hereto.*" The words "if not" used in this paragraph must mean that if the parties fail to agree upon the amount or price, then the lessee can try out the other three alternatives, viz., (1) remove the house, (2) sell it to some other person or persons (to be removed), or re-lease, if he could do so. If this clause stood alone there would be no question as to the matter in issue. Under this clause there is no obligation upon the lessor to buy. The lessee *may* (not must or shall) sell to him if they can agree upon the price. "If not" then the lessee can re-lease if they can agree upon the terms, or failing in either, the lessee can remove, or sell to some other party, who would have the right to remove. Under this paragraph the lessor is not compelled to buy, nor is the lessee compelled to sell, because the word "may" is used. Further if by this paragraph the parties meant that the lessor must buy, and lessee must sell, then the other named options or rights given the lessee would serve no purpose in the contract. There would be no need of giving the right to the lessee to remove the building, or to sell the same to another, or to re-lease the premises, if the lessee must sell and the lessor must buy the improvements. So under this paragraph (numbered 1 by us for convenience) the lessee would have (1) the right to sell to lessor if they could agree upon the price, (2) to remove the improvements, (3) sell the improvements to another, or (4) re-lease the premises if they could agree upon the terms. If this were all of the contract, there would be no doubt upon the vital issue here. The lessor would not be obligated to buy. The trouble comes from the succeeding paragraph, numbered 2 in the statement, for convenience. Of the further situation in the following paragraphs.

III.  By the paragraph of the contract numbered 2 in the statement of the case the interest of the parties becomes hazy.  This paragraph and the one we have just discussed had best be reproduced here, that we may have the full picture in our mind's eye, as we attempt to reach the intent of the parties.  These paragraphs read:

"1.  All buildings and improvements of every kind placed upon the premises by the party of the second part are to be and remain the property of the said party of the second part, and at the termination of this lease may be sold by him to the party of the first part, if the parties can agree upon the amount, if not, then the party of the second part is to have the right to remove the said property from the said premises or to sell it to some other person or persons or to re-lease anew upon terms agreeable to both parties hereto.

"2.  In default of any agreement between the parties hereto as to the purchase price of said buildings at the termination of this lease, the same shall be referred to a board of three arbitrators, two of whom shall be chosen respectively by the parties hereto and the third to be chosen by the parties thus chosen, which board of arbitrators shall determine the matter thus referred to them as soon as may be and fix the price of said building and improvements as provided in this contract and the judgment and finding of said board is to be conclusive and binding to both parties alike, and we hereby agree to abide by the decision of said board of arbitrators as to all matters submitted to them for their decision."

Glancing at the paragraphs above (and they are the trouble-makers in the case) if there was an absolute agreement to sell by the one party, and an absolute agreement to buy by the other, then there would be some reason for paragraph 2 in the contract.  It would serve as the medium for fixing the price.  But this would make the other provisions in paragraph numbered 1, as removing the house, etc., absolutely without use or purpose in the agreement, for, as said, if there was an agree-

ment to sell upon the one part, and an agreement to buy upon the other, all other provisions would be useless. Plaintiff, however, tries to obviate this situation by urging that, although the contract does not bind the lessee to sell to the lessor, yet it does give the lessee four options, (1) to sell to lessor, if he elects so to do, (2) remove the property from the premises, (3) sell the property to another, and (4) re-lease the whole premises if they can agree upon terms. Under this theory the lessee (plaintiff herein) says that he can elect to sell to lessor (defendant) and if he does so elect, the lessor must buy, and if they can't agree upon the price, then such price shall be fixed in the manner presented by paragraph numbered 2, supra. To this contention the appellant says, that the contract (as to the sale) would be unilateral and not enforceable, because there is no obligation upon the lessee to sell. Of this later, if it becomes a deciding factor.

Reverting again to the meaning of this contract, let us examine the paragraph numbered 3, in our statement, for this may give some light. This paragraph first provides for a cheap one-story building to be erected to "cost less than five thousand dollars, the north wall of said building shall be the south wall of the building commonly known as the Orchard Building." This Orchard Building was owned by the lessee at the making of the lease. It is so recited in the lease. But the enlightening portion of this paragraph, which bears upon the meaning of the contract, is the sentence which reads: "It being expressly understood as one of the considerations of this contract, that, *if*, at the expiration of this lease the party of the first part shall purchase said building, no account of the north wall (the Orchard Building wall) of said building shall be taken in computing and determining the price to be paid for said building by the party of the first part." Defendant is the successor of the party of the first part, or the lessor.

The significance of the quoted sentence lies in the word "if" used therein. "If . . . the party of the

first part shall purchase said building,'' then this wall owned by lessee shall not be considered in fixing the price. If there was obligation upon the lessor to purchase the building, the parties were unfortunate in the use of the word "if" in the sentence quoted, supra. Such word indicates that the lessor might purchase, but was not obligated to purchase. Another circumstance against the idea of obligation to purchase, is the character of a building which was to be erected—a cheap building. Had the lessor bound herself to buy the building upon the lapsing of the lease, she would no doubt have wanted a better building, as the permanent structure upon her lot. The whole drift of this lease indicates that the building to be erected thereunder was not intended for the permanent improvement upon the lot.

This contract is one of difficulties in the matter of its construction, but we do not believe that a reasonable construction of it gives the lessee the right to force the lessor to take and pay for the building in dispute. We construe this contract to mean that if the lessee desires to sell the building to the lessor, and the lessor desires to buy the same, and they cannot agree upon the price then the price may be arbitrated as per paragraph 2, supra. There must first be an agreement to sell upon the lessee's part, and an agreement to buy upon the lessor's part, and then an inability to agree upon the price, before the arbitration clause becomes operative. But it suffices for this case, to say that we do not believe that the contract places an obligation upon the lessor to buy. Nor does it bind the lessee to sell to the lessor. However it does say that the lessee *may* (not must or shall) sell to the lessor, but this would mean that the agreement of the one to sell and the other to buy, would be a matter of later action. If the one was willing to sell and the other willing to buy, but unable to agree upon the price, then as said, supra, the arbitration clause would be of value. But as said, it is sufficient to say that the Court of Appeals ruled well, in holding that the lease

did not obligate the lessor to buy. Nor do we think that the matter in issue here was so involved in Knight v. Orchard, 92 Mo. App. 466, as to make the language of the opinion in that case of any binding effect here.

The judgment of the lower court should be reversed, and it is so ordered. All concur.

### ON MOTION FOR REHEARING.

PER CURIAM:—We are satisfied with our ruling to the effect that under the contract the lessor could not be compelled to buy the improvements, or be compelled to pay for them upon his refusal to arbitrate. Much is said in the motion for rehearing about the loss entailed upon the lessee by the foregoing ruling. If there be a loss, it is one of his own making per force of his contract. However, we have ruled upon but one question, i. e., that lessor cannot be forced to buy the improvements. Lessee may have rights under the contract not involved in our ruling. They are not in this case. We ruled upon but the one question. It was the sole decisive question under the record. Motion for rehearing is overruled, as is also the motion to transfer to Court in Banc. All concur, except *Ragland, J.,* absent.