John H. FERGUSON, Respondent,

v.

MISSOURI PACIFIC RAILROAD COMPA-
NY, a corporation, Appellant.

No. 25125.

Kansas City Court of Appeals.

Missouri.

June 2, 1969.

Hendren & Andrae, John E. Burruss, Jr., Jefferson City, for appellant.

Pine & Lockard, Gayles R. Pine, Warrensburg, for respondent.

SHANGLER, Judge.

Plaintiff John H. Ferguson brought suit against the defendant Missouri Pacific Railroad Company for negligently failing to maintain and keep in repair a lawful fence along its right-of-way adjacent to plaintiff's farm in violation of Section 389.650 RSMo, V.A.M.S. As a result, plaintiff's cattle strayed through defendant's fence upon its right-of-way and thereupon 33 of them were struck and destroyed by its train. During the course of the trial the parties stipulated the reasonable market value of the cattle lost thereby to be $5,-600.00, which was the amount returned by the jury in favor of plaintiff. In accord-ance with the mandate of the statutory section cited, the trial court thereafter entered its judgment for plaintiff in double the amount found, or $11,200.00.

Plaintiff's farm, consisting of two separate tracts, was located about 2 and ½ miles east of Kingsville, Missouri. Although his mother actually owned the property, the cattle raising venture involving its use was conducted solely by plaintiff. The home was situated on the 80 acre tract and was separated from the remaining 240 acres to the west of it by the Atkinson property. Both tracts were north of and adjoining the defendant Missouri Pacific Railroad Company's right-of-way, the tracks of which ran generally easterly and westerly. This 240 acre tract extended for about ¼ of a mile along defendant's right-of-way, so that of this acreage, 80 acres (not to be mistaken for the separate tract of like dimension) adjoined the easement. Defendant's fence, consisting of a combination of steel posts with five strands of wire, divided the 240 acre portion from the right-of-way. It was into this area that some four or five days prior to October 13, 1966, plaintiff had turned 75 of his cattle for pasture. They were but a portion of the 108 head intended for sale by plaintiff on October 15, 1966, which sale was to be conducted on the separate 80 acre tract. Plaintiff denied, however, that he had intended to drive the herd of 75 cattle from one tract of the farm to the other for that purpose. Mr. Little, plaintiff's witness, denied, as well, that the cattle were being driven along the tracks to plaintiff's separate 80 acre tract at the time they were struck.

On October 13, 1966, plaintiff had left the farm for Kingsville. At the home he had momentarily encountered George H. Little, a neighbor, who had come to retrieve some farm equipment. Plaintiff left him there in the company of Carl Ritter, plaintiff's hired man. En route to Kingsville, as he went by the pasturage, plaintiff saw his cattle coming through a hole in the railroad fence, "through a place where the

fence was down", going upon defendant's right-of-way. He promptly returned to the farm and enlisted the aid of Mr. Little and Mr. Ritter. They attempted to round up the cattle and return them to plaintiff's enclosure through the aperture in the fence from whence they had come. The cattle were scattered up and down the tracks and right-of-way. Some had reached the south side of Highway 58 which paralleled defendant's tracks to the south, while others had reached the lane at the west end of plaintiff's 240 acre tract. While attempting to return the cattle through the fence onto plaintiff's land, defendant's train came along and sounded its whistle, which sound tended to transfix the cattle. Thirty-three among them were struck and killed. Plaintiff contended they had come upon the tracks through a break in defendant's fence at a point about 150 feet east of some new fencing which had been raised on plaintiff's property when pipe lines were installed there.

A week or so before October 13, 1966, plaintiff had "looked at" the fence, but not too closely; he "knew the fence was bad" but did not notify the defendant because he did not consider that "one wire would make that much difference". Within the twelve months preceding the occurrence, plaintiff had observed "broken wires on the fence; it was rusty and some of the brads on the posts had come out and it needed repair". On the day of the incident he observed "a couple of wires (were) broken and one was pushed down" at the point where the cattle had come through. Plaintiff's Exhibits 1 through 4, photographs taken approximately 10 days after the occurrence, were received in evidence as fairly representing the condition of defendant's fence on October 13, 1966. Plaintiff's witness Ritter made no mention of the condition of the fence, whereas witness Little euphemistically described a "hole in the fence", actually meaning, however, the area "where the wire was mashed down; I don't think it was broken * * * but I didn't look at it too much".

W. C. Sterett, an attorney and claim agent for the Missouri Pacific Railroad testified on behalf of defendant. On November 1, 1966, he had investigated the scene of the occurrence and while so engaged, took numerous photographs of the area, including several of defendant's fence. They were received without objection as Defendant's Exhibits 3 through 12. His inspection revealed one top wire of the fence which was so loose as to cause it to sag to about two feet above the ground. Cecil H. Orth, defendant's roadmaster for that territory, periodically inspected his assigned area which included the right-of-way and fence along plaintiff's land. His last inspection had been conducted two days prior to the occurrence. From his perch upon the "motor car", he did not see "anything wrong" along the fence of right-of-way adjoining the Ferguson property. Upon having learned of the incident on October 13, 1966, he hastened to the scene where he encountered plaintiff who informed him the cattle had come through the fence and showed him at which point. Mr. Orth observed that the two top wires were broken, the ends of which were bright. He also observed cattle tracks on the south side of the fence but none on the side of plaintiff's field. These extended westward to the lane at the west end of the 240 acre tract to a wire gap fence.

Mr. Orth summoned a section crew to the scene to remove the debris from the tracks. At the trial, Walter Porter, section foreman, William A. Birge, Jimmie C. Boyer and Richard G. Burris, section hands of that crew testified for defendant. They generally corroborated Mr. Orth's testimony concerning the nature of the breaks in the wires as well as the location and direction of the cattle tracks, although cross-examination disclosed some variations in the respective versions. These witnesses also testified that they had met by pre-arrangement at the scene of the occurrence on the morning of March 28, 1968, the day the trial commenced, in order to refresh their recollections. Upon

cross-examination, plaintiff inquired of them as to *the condition of defendant's fence on that morning of March 28, 1968,* the morning of the commencement of the trial. Without objection by defendant, they responded thereto variously. Mr. Orth testified he saw one broken wire; Mr. Porter had seen one wire down, but not in three or four places as suggested by plaintiff's counsel. Mr. Birge and Mr. Porter saw one top wire sagging, but not broken, whereas Mr. Burris saw one broken wire but none that sagged.

When defendant had rested its case, plaintiff was recalled in rebuttal. His rebuttal evidence consisted of plaintiff's photographic Exhibits 5 through 11, taken by him the afternoon of March 28, 1968, during the progress of the trial as well as his testimony concerning them. Plaintiff's counsel tendered them into evidence and in so doing addressed the court: "If the Court please, *we offer these pictures to show the condition of the fence yesterday morning,* Exhibits 5 to 11, * * *". (Emphasis supplied.) Over defendant's objection, the specific content of which we discuss later, the court received them.

Defendant asserts the trial court committed prejudicial error in having received in evidence, over its objection, plaintiff's rebuttal evidence including plaintiff's Exhibits 5 through 11 because that evidence related to the condition of defendant's fence at the time of trial and not at the time of the accident and, as such, "constituted incompetent, irrelevant and immaterial evidence which injected a false issue into the case and which served only to contradict defendant's witnesses on a collateral issue".

Plaintiff, on the other hand, contends his Exhibits 5 through 11 were properly admitted because defendant had "offered proof on direct examination of its witnesses as to the condition of the fence at times subsequent to the day plaintiff's cattle were killed". He refers, more pointedly, to the testimony of defendant's witness Sterett who testified concerning his observations of the condition of the fence as of November 1, 1966 as well as defendant's offer, and consequent reception in evidence, of its photographic Exhibits 3 through 12 which depicted the condition of the fence and surrounding area on November 1, 1966, some days after the occurrence of October 13, 1966. Furthermore, plaintiff justifies the admission of the rebuttal testimony because defendant's witness Orth had testified, on cross-examination, as to the condition of the fence on the day of trial which testimony conflicted directly "with the condition of the fence as illustrated in plaintiff's exhibits 5 through 11". Finally, and in any event, plaintiff contends defendant failed to make a "timely and proper objection to rebuttal testimony" foreclosing his present right to complain.

Actually, defendant does not complain that plaintiff's cross-examination of some of its witnesses, notably Mr. Orth and members of the section crew, encompassed collateral matters and elicited irrelevant and immaterial information. Defendant maintains, rather, that having done so, plaintiff is now bound by those answers and cannot be permitted to offer evidence in contradiction of them.

The test of collateralness in matters of testimonial impeachment as adopted by the courts of this state is essentially consistent with that laid down in the celebrated case of Attorney-General v. Hitchcock, 1 Exch. 99 (1847) and announced by Chief Baron Pollock. It is lauded by Wigmore as possessing "the qualities of a true test" and is rendered as follows: "Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?" III Wigmore, Evidence, Third Edition, page 692. This test has been recognized and applied in numerous Missouri cases. In Frechin v. Thornton, Mo.Sup., 326 S.W.2d 122, plaintiff claimed injury as the result of the sudden stop of defendant's truck in front of the automobile which she occupied. Plaintiff's evidence was that the stop light on defendant's truck was not functioning. Defend-

ant testified that he had checked the lights on the vehicle the previous evening and that the stop light was in working order. On cross-examination, defendant denied he had taken the truck to a garage for repairs to the light. Plaintiff, in rebuttal, offered to show by an invoice dated the day following the accident that a garage had performed certain repairs to the light. The trial court excluded the proffered rebuttal testimony and the Supreme Court affirmed, holding, inter alia, that the evidence of subsequent repair was of a collateral nature. The opinion then enunciated the test to be applied to determine collateralness, at page 126:

> " 'The test as to whether the matter is collateral * * * is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case. If a fact may be shown in evidence for any purpose independently of contradiction, it is not collateral.' 98 C.J.S. Witnesses § 633(b), p. 654. See also 58 Am.Jur., Witnesses, § 785, p. 433."

See, also, Scharff v. Grossman, 59 Mo. App. 199, at page 203.

■■ In the case before us, a salient issue for the jury's determination was the condition of defendant's fence on October 13, 1966. The evidence relating to its condition on March 28, 1968, some 17 months thereafter, wrested from Mr. Orth and members of the section crew by plaintiff on cross-examination, clearly would not have been admissible in chief on that basic issue, and was therefore collateral to it. It was irrelevant as well in the sense that it lacked the cogency of logical immediacy to raise a reasonable inference as to the matter in issue. I Jones, Evidence, Fifth Edition, page 279, et seq.; Jones v. Terminal R. R. Ass'n. of St. Louis, Mo.Sup., 242 S. W.2d 473, at page 477. "The law is well settled that where a witness is cross-examined as to a collateral matter, the cross-examiner is bound by the witness' answers and will not be permitted to offer evidence to contradict the witness relative to such

answers." Weaver v. Scofield, Mo.App., 198 S.W.2d 240, at page 242; Frechin v. Thornton, supra, loc. cit.; Gildehaus v. Jones, 356 Mo. 8, 200 S.W.2d 523, at page 526. Two considerata are served by this rule. The jury is shielded from the interminable proliferation of issues. Also, it avoids the unfairness of the surprise of requiring the opposing party to meet and disprove issues not raised by the pleadings. Weaver v. Scofield, supra; Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598; III Wigmore, op. cit., page 690 et seq.

■■ Nor can we accede to defendant's alternative premise that the admission of the rebuttal evidence was justified because the testimony given by defendant's witnesses on cross-examination as to the condition of the fence on the day of trial conflicted directly "with the condition of the fence as illustrated in plaintiff's exhibits 5 through 11". The question thus posed is only a permutation of those points already discussed and determined. We simply add, "A witness is not to be interrogated on a subject not pertinent to the issues involved for the mere purpose of discrediting him". Harper v. Indianapolis & S. Louis R. Co., 47 Mo. 567, at page 581; Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678, at page 682. Such was plaintiff's obvious design. Neither does the record support plaintiff's additional contention that because Mr. Orth acknowledged on direct examination that he had returned to the scene of the occurrence on the morning of trial and testified concerning certain measurements, defendant "voluntarily injected * * * into the case" the issue of the condition of the fence as of March 28, 1968. We do not disagree with the legal principle relied on by plaintiff to the effect that "where a party voluntarily accepts an evidentiary theory tendered by his adversary and offers evidence of the same kind and character, he waives his right to assert on appeal that his opponent's evidence was erroneously admitted". Land Clearance Authority v. Doerenhoefer, Mo.Sup., 404 S.W.2d 385, at page

388; Ramsey v. Parks, Mo.App., 179 S. W.2d 481, at page 483. We hold, however, that the evidence does not support such a conclusion. The record discloses that defendant sedulously avoided any allusion to the fence or its condition as of the day of trial when it was last inspected by Mr. Orth. That issue was introduced gratuitously by plaintiff during his cross-examination of Mr. Orth. Unless some evidentiary rule of inclusion is held to apply, for the reasons already stated, it was error for the trial judge to have received in evidence the rebuttal testimony of plaintiff and his photographic Exhibits 5 through 11.

◼ Plaintiff cites to us Young v. Dueringer, Mo.App., 401 S.W.2d 165, a case involving the application of the doctrine of curative admissibility, and, although not identifying it as such, seeks its remedy as a rule of inclusion. Although plaintiff's argument is not fully articulated, its implicit sense is as follows: Defendant's witness, Sterett, testified on direct examination that he investigated and photographed the scene of the occurrence on November 1, 1966, some 18 days after the cattle were killed. Those photographs depicting the condition of the fence and surrounding area as of November 1, 1968, were received in evidence, without objection, as defendant's Exhibits 3 through 12. As the defendant did not confine its evidence as to the condition of the fence as of October 13, 1966, plaintiff, in fairness, in order to rebut any prejudicial inference raised thereby, should be permitted to adduce evidence as to the condition of the fence as of a date other than October 13, 1966, to-wit: March 28, 1968. We shall take this up shortly.

The doctrine of curative admissibility, after an uneven development, has achieved the stature of a workable rule. Its principle was applied as early as the year 1915 in Carpenter v. Kansas City Southern Ry. Co., 189 Mo.App. 164, 175 S.W. 234, at page 236, although then under the designation "invited error". Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d

780, contains a full exegesis of the theoretical underpinnings of the doctrine. In language excerpted from I Wigmore, Evidence, Third Edition, page 304 (at page 786 of the opinion) is posed the evidentiary exigency to be met by the application of the doctrine. It concludes that Missouri courts have adopted that rule classified by Wigmore as the Massachusetts rule, holding in effect that if one party offers irrelevant, incompetent or illegal evidence which is received by the court, then:

"* * * the opponent may reply with similar evidence whenever it is needed for *removing an unfair prejudice which might otherwise have ensued from the original evidence, but in no other case.*" (Emphasis supplied.)

The application of the doctrine is confined to those instances where the offended party fails to object to the improper evidence because "where the (offended party) duly objected to the improper testimony offered by respondents and his objection was erroneously overruled, he cannot be heard to insist upon the admission of improper testimony in rebuttal, because his objection will save him on appeal and he needs no other protection". Buck v. St. Louis Union Trust Co., 267 Mo. 644, 185 S.W. 208, at page 213. In Biener, supra, defendant had acknowledged responsibility for the collision. It maintained, however, that plaintiff was not injured. The scope of defendant's entire cross-examination was directed to creating an inference that plaintiff was not injured, that the force of the impact was such as not likely to injure anyone. A witness for plaintiff was allowed to testify, above defendant's hearsay objection, that another passenger was confined to the hospital for a week following the collision. The court affirmed this ruling, 160 S.W.2d at page 785:

" * * * where so-called collateral matters are once permitted, and where a subject is once gone into without objection, when first offered * * * even though the relevancy be slight, if by limiting full inquiry *an unfair advantage*

*would accrue to one of the parties,* the trial court should not be convicted of abuse of discretion by allowing full scope to the inquiry, *unless to do so would so confuse the jury that an intelligent consideration of the case would be prevented.* The effect of ruling out the evidence complained of by appellant herein would have been to deny respondent the right to rebut the prejudicial effect of evidence * * *". (Emphasis supplied.)

See, also, Jones v. Werthan Bag Co., Mo. Sup., 254 S.W. 4, at page 10; Enyeart v. Peterson, 184 Mo.App. 519, 170 S.W. 458, at page 459.

In Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859, a case involving the admissibility of hospital records, judgment for plaintiff was reversed, on the ground that the trial court abused its discretion in refusing to permit defendant to use a portion of the records as curative evidence after the plaintiff used other portions of them without previously having qualified them as to admissibility under the statute. At pages 866, 867, the court delineates the elements of the rule with clarity.

"In the case at bar, the evidence offered by appellant and excluded by the court was, in fact, *logically relevant,* and was offered to rebut evidence which went into the record without objection on the part of appellant. Appellant thus elected to protect itself, not by objecting to respondent's evidence on the ground that no proper foundation had been laid, but by using portions of the hospital record favorable to its cause which had been brought into court by respondent but not offered by him. * * *

"The rule that irrelevant, incompetent, or illegal evidence may be admitted to rebut evidence of like character *is rightly limited to cases where the rebuttal is confined to the evidential fact to which the original evidence was directed.* It does not permit the indiscriminate introduction of like evidence touching other issues. The permissible office of such

evidence is merely to neutralize by direct contradiction the force and effect of the inadmissible evidence offered by the adverse party, and afford reciprocal rights to the parties in the use of evidence which the original party has in effect vouched for as being the kind of evidence properly to be considered." (Latter emphasis supplied.)

In Young v. Dueringer, supra, the case cited to us by plaintiff, the highway patrolman who had investigated the accident testified for plaintiff from the report as to the circumstances of the collision, including his opinion as to the locale of the impact. Defendant did not object to this testimony. Upon cross-examination of the officer, defendant sought his opinion as to the speed of the automobile which plaintiff was occupying. It was excluded by the trial judge on plaintiff's objection. The court held it should have been admitted under the doctrine of curative admissibility and that it was prejudicial error to have excluded it. In so doing, 401 S.W.2d at page 168, the court acknowledged it did not have "a feeling of complete assurance as to the limits of the doctrine of curative admissibility * * *". See, also, Sigman v. Kopp, Mo. Sup., 378 S.W.2d 544, where the term, "evidence of the same caliber" was used to describe the quality of curative evidence sanctioned.

From a consideration of these authorities we have concluded that the doctrine of curative admissibility can have no application where the illegal evidence originally admitted could not have resulted in unfair prejudice to the plaintiff or in unfair advantage to the defendant. In any event, countervailing illegal evidence "of the same caliber" is not needed as no harm resulted and none needs be "neutralized". Biener v. St. Louis Public Service Co., supra, 160 S.W.2d at page 785; I Wigmore, Evidence, page 304; Sigman v. Kopp, supra, 378 S.W.2d at page 547; Young v. Dueringer, supra, 401 S.W.2d at page 167. Contrary to plaintiff's apparent contention, merely because defendant's photographic

Exhibits 3 through 12 were taken by Mr. Sterett 18 days after the occurrence, they were not thereby rendered inadmissible. The date on which a photograph is taken is not determinative of its admissibility. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295. (We note plaintiff's own photographic Exhibits 1 through 4 depicting the fence in issue were themselves taken some 10 days after the event.) Assuming, without deciding however, that the testimony of witness Sterett was illegal (apart from a consideration of the photographs themselves), because relating to observations as to the condition of defendant's fence 18 days later, its admission in evidence could not have resulted in prejudice to plaintiff. Sterett testified that he saw no broken wires on that day. Yet, Mr. West, defendant's General Roadmaster and Mr. Orth, both of whom had examined the fence on October 13, 1966, testified to having observed two broken wires on that date. These findings coincided almost precisely with those of plaintiff, himself. The issue basically in dispute seems to have been, not whether the breaks in the fence, as such, existed on that day, but whether they had been of sufficient duration as to have imparted knowledge of them to the defendant. Defendant's evidence, moreover, tended to prove that the cattle had gained access to defendant's tracks through a wire gap fence at the west end of plaintiff's 240 acre tract, which fence did not adjoin defendant's right-of-way and over which it had no control. Such were the issues raised by the evidence in the case. Sterett's testimony resulted in no discernible prejudice to plaintiff.

■ Neither does the doctrine apply where the evidence offered in rebuttal is not "confined to the evidential fact to which the original evidence was directed. It does not permit the indiscriminate introduction of like evidence touching other issues". Dorn v. St. Louis Public Service Co., supra, 250 S.W.2d p. 866. The issue raised by the original "illegal" evidence of

Mr. Sterett was the condition of defendant's fence on November 1, 1966. Plaintiff did not attempt to meet that evidential fact. He did not undertake to contradict Sterett's testimony. Instead, he raised a distinctly disparate issue—the condition of defendant's fence on March 28, 1968—and did so by first eliciting collateral testimony thereon from defendant's witnesses and thereafter directing the force of his rebuttal to contradict such answers. At the trial plaintiff never pretended his entitlement to curative evidence. The declaration which accompanied his formal tender of photographic Exhibits 5 through 11 in rebuttal confirms this conclusion: " * * * we offer these pictures to show the condition of the fence yesterday (March 28, 1968) morning * * * and this is offered effecting (sic) the credibility of the witnesses who testified they inspected the fence yesterday morning * * *". The court, responsive to plaintiff's request, admitted the rebuttal evidence "on the theory of credibility of the witnesses". For the reasons stated, plaintiff's rebuttal evidence was not curative and was otherwise inadmissible. As it confused a spurious issue with genuine ones, and could only have impaired an intelligent consideration of all the issues and evidence by the jury, the court committed prejudicial error in having received it.

■ Finally, plaintiff contends that defendant failed to make timely and proper objection to his rebuttal evidence and therefore cannot complain on this appeal of its admission. Plaintiff, in rebuttal was asked by his counsel:

"MR. PINE: Now, then, yesterday afternoon did you make some photographs of this particular fence we have been talking about? Yes, sir."

That question was the first reference made to the condition of defendant's fence on March 28, 1968. Defendant promptly objected:

"MR. BURRUS: I am going to object to any testimony about the condition of

this fence as of yesterday afternoon. I don't think it is an issue in this case. The issue is the condition of the fence on October 13th, 1966."

Thereupon, a discussion between the court and counsel was conducted outside the hearing of the jury, after which the testimony was allowed and the photographic exhibits admitted. As plaintiff's interrogation began to touch on the condition of the fence as depicted in the photographs, defendant requested of the court: "May I make a continuing objection to all this testimony?" The court responded: "So understood, yes sir." Defendant's objection was timely. It was also carefully contrived to save defendant's objection to the admission of plaintiff's Exhibits 5 through 11 and to plaintiff's testimony relating to them. We rule this point against plaintiff.

As this case must be reversed and remanded for new trial, we need not consider appellant's additional two assignments of error involving the questions of the propriety of plaintiff's closing argument and of an instruction submitted by him. We are confident that plaintiff will carefully consider these assignments prior to an eventual new trial.

The judgment of the trial court is reversed and this cause is remanded for a new trial.

All concur.