**William J. OVERFIELD and Bonita A. Overfield, Appellants,**

v.

**James W. SHARP and Janice L. Sharp, Respondents.**

**No. WD 33876.**

Missouri Court of Appeals, Western District.

March 13, 1984.

Robert M. Hill, Hill, Lehnen & Driskill, Richmond, for appellants.

A.V. McCalley, Richmond, for respondents.

Before CLARK, P.J., and DOWD and REINHARD, Special Judges.

JAMES R. REINHARD, Special Judge.

Plaintiffs appeal from a judgment entered on a jury verdict for defendants in their action for breach of an implied warranty of habitability in the purchase of a new house. One of their contentions of error requires the cause to be reversed and remanded for a new trial.

Defendants constructed the house in question on a lot in the City of Wood Heights, Missouri. On December 7, 1979, plaintiffs paid defendants the full purchase price of $65,500 and received title to the property. In their petition, plaintiffs sought damages from defendants for numerous defects in the house, including problems involving the septic tank; leaking pipes, windows and roof; peeling paint; faulty wiring; cracked garage and living room floors; insufficient structural supports and improper grading and fill.

In support of their allegations at trial, plaintiffs principally relied upon the testimony of a civil engineer and plaintiff William Overfield. After Overfield testified on direct examination, defendants extensively cross-examined him, without objection, concerning his previous purchase of new homes in North Port, Alabama and Rochester, New York, and his subsequent complaints of defects in both properties. Overfield admitted that he and his wife had encountered difficulties with their Alabama home constructed by William Blakney. In response to further cross-examination, he stated that the principal problem involved flooding beneath the house during wet weather. He indicated that this matter and other minor complaints were settled after

commencing suit. He also acknowledged problems existed in the Rochester, New York house they had purchased and an out-of-court settlement with respect to those defects.

After plaintiffs concluded their case and anticipating that defense counsel would introduce additional evidence related to defects in the Alabama home, plaintiffs' counsel made an oral motion in limine to prevent any further reference to the Alabama matter. In response to plaintiffs' motion, defense counsel stated that the evidence was admissible, because it was a matter of impeachment. The court denied plaintiffs' motion and held that the evidence could be admitted for purposes of impeachment only.

William Blakney was then called as a witness and testified in detail to plaintiffs' complaints regarding the Alabama house, the subsequent litigation and the settlement. Blakney's testimony contradicted that of Overfield concerning the number and character of defects alleged by plaintiffs to be present in the Alabama home. According to Blakney, their complaints included the septic tank, air conditioner, paint on a door, dampness under the house, settling of the house, and a muddy yard. He also contradicted Overfield's testimony elicited on re-direct examination that the cash award provided for by the settlement was to enable Overfield to make repairs himself, instead stating that Overfield intended to use the cash settlement to pay household expenses. In addition, defendant introduced a copy of plaintiffs' letter to the Tuscaloosa board of realtors, reciting their grievances and it was read to the jury. Ultimately a letter from plaintiffs' Alabama lawyer to Blakney's lawyer, also outlining their complaints was admitted. In these two exhibits, plaintiffs, among other things, claimed that the dampness and raw sewage had been a contributing factor in their becoming ill, resulting in Mrs. Overfield's hospitalization. Plaintiffs strenuously objected to Blakney's testimony, as well as the exhibits at each and every opportunity, but to no avail.

Plaintiffs' principal complaint on appeal concerns Blakney's testimony and the exhibits related to the Alabama house. Other points raised on appeal allege that the court erred in sustaining defendants' objection to testimony concerning city housing and building code violations; in overruling plaintiffs' objection to testimony concerning the value of the residence; in failing to permit the jury to view the premises; in permitting improper argument by defense counsel, and in failing to sustain a motion for new trial because the verdict was against the weight of the evidence.

■ Plaintiffs made no trial objection to defendants' argument. Moreover, plaintiffs failed to raise their complaints concerning housing code violations, the property valuation or the jury's inspection of the property in their motion for new trial. Therefore, these allegations are not preserved for appellate review. Rule 78.07; *Ohlendorf v. Feinstein*, 636 S.W.2d 687, 690 (Mo.App.1982); *Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 690 (Mo.App.1978).

■ As to plaintiffs' contention that the verdict is contrary to the weight of the evidence, " '[t]here is, perhaps, no more firmly established doctrine than that on appeal from a judgment rendered on a verdict of a jury, an appellate court is not authorized to weigh the evidence.... Whether a jury's verdict is against the weight of the evidence is a question for the trial court alone.' " *Neavill v. Klemp*, 427 S.W.2d 446, 450 (Mo.1968), quoting *Wilcox v. Coons*, 362 Mo. 381, 241 S.W.2d 907, 917 (banc 1951). Therefore, this point is ruled against plaintiffs.

We now turn our attention to plaintiffs' contention that the trial court erred in permitting Blakney's testimony and the related exhibits into evidence. At trial and on appeal, defendants argue that Blakney's testimony was admissible as rebuttal evidence to impeach plaintiffs' testimony as to the number and kind of complaints which they had in regard to the Alabama house. Defendants assert that "[p]laintiff, Mr. Overfield, was given every opportunity to testify to all of the complaints he had made

against Blakney, but he chose not to do so. Had he done so there would have been no reason to offer Mr. Blakney's testimony to impeach his testimony."

■ The law is well settled in Missouri that where a witness is cross-examined as to a collateral matter, the cross-examiner is bound by the witness' answers and will not be permitted to offer evidence to contradict the witness relative to such answers. *Frechin v. Thornton*, 326 S.W.2d 122, 126 (Mo.1959); *Cantrell v. Superior Loan Corporation*, 603 S.W.2d 627, 637–38 (Mo. App.1980); *Ferguson v. Missouri Pacific Ry. Co.*, 442 S.W.2d 549, 553 (Mo.App. 1969); *Weaver v. Schofield*, 198 S.W.2d 240, 242 (Mo.App.1946). Two considerations are served by the rule. The jury is shielded from the interminable proliferation of issues which otherwise would allow the court to go into the merits of all such collateral matters, and instead of trying the one lawsuit, the court might well be called upon to try as many questions as there were collateral matters presented. *Hoffman v. Graber*, 153 S.W.2d 817, 820 (Mo. App.1941). Also, it avoids the unfairness and the surprise of requiring the opposing party to meet and disprove issues not raised by the pleadings. *Ferguson v. Missouri Pacific Ry. Co.*, 442 S.W.2d 549, 553 (Mo.App.1969); *Weaver v. Schofield*, 198 S.W.2d 240, 242 (Mo.App.1946).

■ The test of whether the matter is collateral for purposes of testimonial impeachment is whether or not "the party seeking to introduce it ... would be entitled to prove it as part of his case. If a fact may be shown in evidence for any purpose independent of contradiction it is not collateral." *Frechin v. Thornton*, 326 S.W.2d 122, 126 (Mo.1959); 98 C.J.S. *Witnesses* § 633(b), p. 654.

■ Defendants contend that the evidence was admissible to establish plaintiffs' bad faith in filing the Missouri lawsuit. In circumstances such as that of the present case, it is improper to admit evidence of a party's participation in prior lawsuits absent evidence that the specific facts of the prior litigation are relevant or that a pattern of fraudulent suits is present. *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 640 (Mo.App.1980); *Dent v. Monarch Life Ins.*, 231 Mo.App. 283, 98 S.W.2d 123, 125 (1936). Here there were no facts involving the prior Alabama litigation which were relevant to any issue in the case at bar. Furthermore, there was no fraud established. Defendant's evidence failed to "disclose any fraud practiced by plaintiff in the matter before the court. [Plaintiff] ... was entitled to make as many claims or file as many lawsuits as the circumstances justified." *Dent v. Monarch Life Insurance*, 98 S.W.2d at 125.

■ The number and kind of complaints plaintiffs made in Alabama were collateral to any question in issue and defendants were, therefore, bound by William Overfield's answers elicited on cross-examination. It was error to permit the introduction of this prejudicial evidence under the pretext of impeaching the witness. *Ferguson v. Missouri Pacific Ry. Co.*, 442 S.W.2d 549 (Mo.App.1969); *Harter v. King*, 259 S.W.2d 94 (Mo.App.1953); *Weaver v. Schofield*, 198 S.W.2d 240 (Mo.App.1946); *Hoffman v. Graber*, 153 S.W.2d 817 (Mo. App.1941).

Indeed this case vividly demonstrates the soundness of the rule which concludes the cross-examining party by the witness' answers where it is sought to impeach his credibility by inquiries into purely collateral matters. After William Blakney testified, plaintiff, in rebuttal, felt compelled to explain the matters about which Blakney testified. Ultimately, additional letters from plaintiffs' Alabama attorneys outlining complaints as well as the settlement itself were introduced into evidence. "It is to forestall the necessity for any such excursion into collateral matters that the" rule exists. *Hoffman*, 153 S.W.2d at 820.

Reversed and remanded for a new trial.

CLARK, P.J., and DOWD, Special Judge, concur.